# STATE EX REL. INDEPENDENT DISTRICT TELEGRAPH COMPANY ET AL. *v.* SECOND JUDICIAL DISTRICT COURT OF SILVER BOW COUNTY ET AL.

[Submitted February 11, 1895.—Decided February 18, 1895.]

CERTIORARI—*Review of appointment of receiver of corporation.*—In reviewing the appointment of a receiver of a corporation on writ of *certiorari,* the inquiry is limited simply to the question whether under the facts, as recited, the court had jurisdiction to make the appointment, and the question of the court's discretion in so doing does not come under consideration. (*State* v. *Judge of Second Judicial District Court,* 10 Mont. 401, cited.)

RECEIVER—*Jurisdiction of court of equity to appoint pendente lite.*—In the case at bar four shareholders of two small corporations, which were paying handsome dividends, got control of the majority of the stock, elected their own officers, pocketed the dividends, kept false books to deceive the shareholders, and pretended to buy for the corporations a worthless franchise for which they mortgaged all the property of the corporations, for the purpose of having the mortgage foreclosed, and the property of the corporations wiped out. An action was brought by the minority stockholders against the corporations, joining as defendants therein the managing officers, and the complaint asked for a dissolution of the corporations; also that the foreclosure of the mortgage be prohibited, that the notes and mortgage be declared null and void, and that the unlawful acts of the managing officers be set aside, and their future wrongful conduct be enjoined. *Held,* That a court of equity had power to appoint a receiver for the corporations pending such action, but that the case is a precedent only as to its own facts, and not for the unwise withdrawal of the business of a corporation from the management of its duly elected and lawfully acting trustees.

CERTIORARI to review the action of the district court of the second judicial district in appointing a receiver.     Dismissed.

Statement of the case by the justice delivering the opinion.

This is a writ of certiorari directed to the district court to review its action in appointing a receiver of the properties of

two of the relators, viz., the Independent District Telegraph Company and the Citizens' District Messenger and Burglar Alarm Telegraph Company, it being claimed by the relators that the district court acted in that matter without jurisdiction. The receiver was appointed in an action entitled as follows: " *H. L. Haupt and E. A. Nichols, trustee, plaintiffs,* v. *Independent District Telegraph Company, Citizens' District Messenger and Burglar Alarm Telegraph Company, Fred B. Puddington, H. Sommers, John O'Rourke, Thomas D. Butterfield, G. A. Lauzier, Alex. Johnston, and John Doe (whose true name is unknown), defendants."* The appointment was made upon the complaint in that case and upon affidavits filed. The following facts appear from the complaint: Each of the companies defendant in the case in the district court (and who are relators here) is a corporation organized under the laws of this state, The plaintiff Haupt is the owner of seventy-six (76) shares of the stock of the Independent company. The plaintiff Nichols. as trustee, is also owner of seventy-six (76) shares of said company. The Independent company is the owner of a franchise from the city of Butte permitting it to carry on the district messenger business, and granting to the company the use of the streets and alleys of the city for the purpose of said business. The Citizens' company owns a similar franchise. On May 1, 1892, the said two companies entered into an agreement by which they should put their respective stocks, franchises, and property into a common business to be carried on by officers and agents to be appointed by the two corporations jointly. This agreement was to run for twenty years. All moneys earned should go into a general fund and be in the hands of a general treasurer. After paying expenses a reserve fund of $500 was to accumulate in the hands of the treasurer. After paying expenses and the accumulation of this reserve the profits were to be paid by the general treasurer to the respective corporation treasurers in the proportion of five-ninths to the Independent company and four-ninths to the Citizens' company, to be distributed by the said respective companies as dividends on their stock. Thereupon the general manager and general treasurer were elected to carry on this joint business. The reserve fund of $500 was accumu-

lated.   The business was carried on until June 1, 1893.   At that date the stockholders, Sommers, Lauzier, Butterfield, and O'Rourke, united together and obtained a majority of the stock of each company.   After obtaining this stock those stockholders united and conspired together to manage and conduct the combined corporations for their individual benefit, and to exclude from the management, profits, and benefits the plaintiffs Haupt and Nichols.   Since that time said plaintiffs Haupt and Nichols have been entirely excluded from the profits, management, and benefits of said corporations and the combination of the corporations.   From the time said association of the two corporations was formed until said Sommers, Lauzier, Butterfield, and O'Rourke obtained control of the said combined business there was paid to the treasurers of the said corporations $500 a month to be distributed by them as dividends on the stock of the corporations.   That when said Sommers and others obtained control of the said associated corporations there was in the hands of the general treasurer said reserve fund of $500 and also cash in the sum of $1,000, and also interest on the reserve fund of $25; that this total sum of $1,525 was turned over to Lauzier, the general treasurer, elected by his friends Sommers, Butterfield, and O'Rourke; that the current expenses, which then remained unpaid, did not exceed $300; and that there was therefore $1,225 available as a dividend to be paid to the stockholders; that ever since said Sommers and others obtained control as aforesaid they have refused to give the plaintiffs any account of the profits of the association and have refused to pay any dividends on the stock.   Plaintiffs allege on information and belief, that, since the Sommers control obtained, that is since June 1, 1893, the net profits of the associated corporations have been $500 per month, and that said Sommers, O'Rourke, Butterfield, and Lauzier, instead of paying those profits as dividends, have converted the same to their own use.

On February 9, 1894, the officers elected under the Sommers management executed to Fred B. Puddington three promissory notes, payable each in nine months, for the sums respectively of $5,000, $2,000, and $2,000, bearing interest at the rate of one and one-fourth per cent per month; that said Sommers'

management, also as security for said notes, executed to said Puddington a chattel mortgage upon the franchises and all the property of said corporations; that said notes purported to be given for the purchase price of a certain franchise granted by the city of Butte to said Puddington, a franchise to erect and maintain a district messenger and burglar alarm telegraph system in the city of Butte; that said franchise was granted by the city subject to certain conditions precedent. The complaint then sets out those conditions, and then alleges that none of those conditions was fulfilled. The complaint alleges that said Puddington's franchise is forfeited and void, and was forfeited and void at the time of the pretended sale of the same to the two said companies, and the execution of said notes and mortgage. The complaint further states that said Sommers and others at the time of said pretended sale well knew that the Puddington franchise was forfeited and void and was of no no value whatever. It is further alleged that said Sommers, Lauzier, Butterfield, and O'Rourke conspired together to defraud the plaintiffs, and to obtain possession of the plaintiffs' stock and all interest in the independent company and of the said combination of the two companies; and that in fact they executed said mortgage and notes without any consideration, and for the purpose of bringing about the sale of said property and franchises of the said companies, and of foreclosing all interest of the plaintiffs therein. The complaint further alleges, that, unless the negotiation of the said notes is restrained and the notes and mortgage declared fraudulent and void, all the property of the independent company will be sold under the mortgage, and plaintiffs will be deprived of their interests in the said corporation.

The complaint prays for several items of relief; among them, that said Fred B. Puddington and all persons claiming under him may be enjoined from negotiating said notes or mortgage, or from collecting or foreclosing the same, or from interfering in any manner with the properties or franchises of the said companies; and that said mortgage and notes be adjudged null and void.

In addition to the allegations made in the complaint a number of affidavits were filed and used on the hearing. One

Le Clare deposes that he heard John. O'Rourke and G. A. Lauzier, two of the defendants in the district court, conversing about the business of the said district messenger companies, and that O'Rourke said, "that if they [meaning himself, Butterfield, Lauzier, and Sommers] would stand together, they would do that Dutch outfit up," referring to the Schultzes and other stockholders.

H. A. Neidenhofer deposes, that from December, 1890, to February, 1892, he was manager of the Independent company, and that all that time monthly dividends were paid to its stockholders, amounting to $750 per month, excepting during the time when there was an opposition company; and that those dividends were net profits. This affiant also states that after the combination was made between the two companies they paid dividends of $500 a month.

Seth B. Smith, another affiant, stated that prior to the time when Somers and his party obtained control of the combined corporations he, affiant, was treasurer of the combination. He testified in his affidavit rather fully about the formation of the combination between the two companies. He testified that the reserve fund above mentioned, of $500, accumulated in the hands of the treasurer; that finally Sommers and his party bought the affiant's stock, and he retired from the management; that he turned over to the new management all the funds, in three different checks of $911.80, $107.94, and $14.25; that at that time there were expenses outstanding and unpaid of only $400; that when he retired he was just preparing and ready to declare a dividend of $500, but he was instructed by the Sommers party not to pay said dividend; that while affiant was treasurer of the company he paid dividends to the stockholders of about $500 a month.

Carl Shultz and his wife Mary Shultz each made an affidavit in which they testify as to Lauzier's and Butterfield's negotiations for the purchase of affiants' stock, and threats that if they did not sell that they, Lauzier and Butterfield, would freeze out said affiants.

Haupt, one of the plaintiffs, also makes an affidavit that for more than a year after the combination of the two companies he received monthly dividends on his stock of fifty cents per

share. This affiant also alleges on information and belief, that the combined corporations keep two sets of books, one of which sets of books shows the actual receipts and disbursements and the net profits of the association, and the other set of books does not show the correct accounts of the said corporations, but is kept for the purpose of deceiving and misleading stockholders who have been excluded from the management and participation in the management of said business; that since the Sommers party obtained control of the business affiant has received no dividends on his stock, although there have been large profits. This affiant then sets forth the execution of the Puddington notes and mortgage. He also sets forth the facts showing that the Puddington franchise which he, Puddington, purported to sell to the companies for $9,000, was absolutely void and worthless.

One of the employees of the combined corporations testifies to hearing Butterfield say that the business was good and paying as well as any business in town.

An answer was filed by the defendants and also some affidavits. It is not necessary to recite the contents of these papers, for, on the writ of certiorari in this court, the question of the discretion of the lower court in appointing a receiver is not under review. After hearing argument in the district court as recited in its order the court found that the plaintiffs were entitled to the appointment of a receiver *pendente lite.* It was therefore ordered that A. H. Barrett be appointed receiver *pendente lite* of the franchises, plants, business, books, and accounts, and of all other property belonging to the said two corporations for the purpose of managing and conducting said business, and he was by the order authorized and directed to take possession of the said premises, franchises, plants, and all property, books, and accounts of any nature whatsoever belonging to the said corporations, and to manage and control the same during the pendency of this action, and for that purpose to take care of and manage and control the said property and business and to pay all debts and obligations and collect all moneys due to the said corporations. It was ordered that the receiver give a bond with sureties in the sum of $10,000.

Upon the appointment of the receiver the said G. A. Lau-

zier made an application to this court upon behalf of himself, and purporting to be also on behalf of the two district telegraph companies, asking for a writ of certiorari to review the action of the district court in appointing a receiver. The application, of course, is made upon the ground that the district court had no jurisdiction to make the appointment. That is the point discussed and decided in the opinion below.

*Robinson & Stapleton*, and *J. W. Cotter*, for Relators.

*George Haldorn*, and *O. M. Hall*, for Respondents.

The only question to be determined in this case-is, "Had the district court jurisdiction to make the order appointing a receiver"? (*State* v. *District Court*, 25 Pac. Rep. 1053.) Under a statute almost identical with our own the jurisdiction of the court to appoint a receiver of a corporation at the suit of a stockholder was sustained, it being alleged in the complaint that the officers were conducting the business for their own benefit, to the injury of a stockholder. (*In re Lewis*, 35 Pac. Rep. 288.) The power of a court of chancery, in the exercise of its general equity jurisdiction, independent of statute, to decree a dissolution of a corporation and to appoint a receiver *pendente lite*, where through the fraudulent acts of the majority stockholders the object of the corporation has failed, is recognized by the following authorities: *Miner* v. *Belle Isle Ice Co.*, 17 L. C. P. 413; *St. Louis etc. Min. Co.* v. *Edwards*, 103 Ill. 472; *Haywood* v. *Lumber Co.*, 64 Wis. 679; *Wayne Pike Co.* v. *Hammons*, 129 Ind. 368; 20 Am. & Eng. Ency. of Law, 49, 272; *Order Iron Hall* v. *Baker*, 20 L. R. App. 210; *Edison* v. *Phono. Co.*, 22 At. Rep. 195; *Ford* v. *Kansas City etc., Ry. Co.*, 52 Mo. App. 439; 1 Morawetz on Corporations, §§ 285, 286; *Ranger* v. *Champion Cotton Press Co.*, 52 Fed. Rep. 609; *Hall* v. *Astoria etc. Lumber Co.*, 5 R. R. & Corp. L. J. 412; 2 Beach's Equity Jurisprudence, § 967; 2 Waterman on Corporations, 356; *Hanover Nat. Bank* v. *Bank of Greenville*, 23 L. C. P. 531. The tendency of recent decisions is to apply the same equitable remedies to private corporations as are applied to mere partnerships. (*McIntosh* v. *Perkins*, 32 Pac. Rep. 653; *Fischer* v. *Superior Court*, 98 Cal. 67.) And

the power of a court of equity to appoint a receiver of an insolvent corporation cannot now be questioned. (*Wallace* v. *Loomis*, 97 U. S. 146; *Edwards* v. *First Nat. Bank*, 41 Kan. 475; *Quincy etc. R. R. Co.* v. *Humphreys*, 145 U. S. 82; and see *Gaylord* v. *Wayne etc. R. R. Co.*, 6 Biss. 286.)  The case at bar is distinguishable from the California decisions (*Neal* v. *Hill*, 16 Cal. 145; *French Bank case*, 53 Cal. 495; *Batterman* v. *Superior Court*, 54 Cal. 288), and the latter are no more binding on this court than would be the decisions of the California court in any case involving a question as to the common law.

DE WITT, J.—The question in this case is simply whether under the facts, as recited in the statement above, the district court had jurisdiction to appoint a receiver. (*State ex rel. Murphy* v. *District Court*, 10 Mont. 401.  See, also, *French Bank case*, 53 Cal. 550.)  There is here no question of the court's discretion under consideration.

The relators in this application rely very largely upon the decision in the French Bank case, but we think that the case at bar is distinguishable from that case in many respects, and, in order to make the distinction apparent, we quote as follows from the California case:

"Irrespective of the effect of the fifth subdivision of section 564 of the Code of Civil Procedure, which will be presently considered, there is no jurisdiction vested in courts of equity to appoint a receiver of the property of a corporation in a suit prosecuted by a private party.  This is only to say that there is no jurisdiction vested in these courts in such a case to *dissolve* a corporation; for the power of a receiver, when put in motion, of necessity supersedes the corporate power.  It necessarily displaces the corporate management and substitutes its own, and assumes, in the language of the order under review, 'to do all and every thing necessary (in the judgment of the receiver, under the advice of the court) to protect the rights of the creditors and depositors of said corporation.'  This precise question was brought directly under consideration here in the case of *Neall* v. *Hill*, *supra*, where, in a suit brought by a stockholder, a receiver had been appointed by the district court

to take possession of the property of the 'Gold Hill and Bear
River Water Company,' a corporation existing under the laws
of this state. The opinion in that case, rendered by Mr. Jus-
tice Cope, and concurred in by the whole court, after referring
to the adjudicated cases in England and in this country, uses
this language: 'This decree, if permitted to stand, must neces-
sarily result in the dissolution of the corporation; and in that
event the court will have accomplished, in an indirect mode,
that which, in this proceeding, it had no authority to do di-
rectly. It is well settled that a court of equity, as such, has
no jurisdiction over corporate bodies for the purpose of re-
straining their operations, or winding up their concerns. We
do not find that any such power has ever been exercised in the
absence of a statute conferring the jurisdiction.' Of course it
is not to be doubted that the trustees of a corporation, the per-
sons who constitute its direction, and from time to time exer-
cise the corporate authority in the management of its affairs,
are subject to the control of courts of equity, or, as observed
by Chancellor Kent, 'that the persons who from time to time
exercise the corporate powers may, in their character of trus-
tees, be accountable to this court [the court of chancery] for a
fraudulent breach of trust; and,' he adds, 'to this plain and
ordinary head of equity the jurisdiction of this court over cor-
porations ought to be confined.' (*Attorney General* v. *Utica
Ins. Co.*, 2 Johns. Ch. 388.) And in exercise of these ad-
mitted equity powers of the court, referable to the well-known
grounds upon which its jurisdiction ordinarily proceeds, em-
bracing the cognizance of fraud, accident, trust, and the like,
the rights of natural persons injured or put at hazard through
corporate proceedings unauthorized by law will find ample pro-
tection and redress. But even in such a proceeding as that
the trustees must, of course, be made parties defendant; and it
will be observed, upon looking at the complaint of Gallagher
in this view, that it is not substantially sufficient in its scope
to put the equity powers of the court in motion for any pur-
pose. The corporation itself being the sole party defendant
the trustees—those persons upon whom the management of its
affairs is devolved—are not parties, nor is any relief sought
against them personally. That there is no *inherent power* in

the district courts, as being *courts of equity,* to appoint a receiver in such a case as that presented by the complaint of Gallagher, is, therefore, apparent both upon principle and authority."

In the California case an important element in the decision, as it appears, was that the appointment of the receiver acted as a dissolution of the corporation. In the case at bar no such result is intended by the order appointing the receiver or is accomplished by that order. It is true that in the complaint the case in the district court asks for a dissolution of the corporation, but whether such relief may be granted in that action is not now before us for review. The complaint also asks another relief, as set forth in the statement, namely, that the negotiation of the notes described be restrained; that the foreclosure of the mortgage be prohibited, and that the notes and mortgage be declared null and void. While the determination of these matters is pending in the action the receiver is to act. His appointment is *pendente lite* only, and he is authorized to do only those acts which are peculiarly *pendente lite.* Again, in the *French Bank case, supra,* one ground of the decision was that the action was against the corporation only (see page 546 of the decision) and not against the malfeasing trustees, that is, the "persons upon whom the management of its affairs is devolved." (Page 551.) But in the case at bar the managing officers of the corporation are joined as defendants, and their unlawful acts are sought to be set aside, and their future wrongful conduct enjoined. The receiver is not to wind up the corporation under his appointment; he is simply to manage the affairs of the same, while charges of the most outrageous frauds by the managers and controllers of the corporation are being investigated in the trial of the action. We are fully aware of the reluctance of courts of equity to interfere by receivership in the management of corporations, or to take that management from trustees elected by the shareholders.

It is said in Morawetz on Private Corporations, section 281, as follows: "A court of equity will grant all relief to a shareholder which the nature of his case may require. But it has always been a settled principle that no interference with the

management of a corporation can be justified, unless such interference is absolutely necessary to the attainment of justice. The reason of this rule is obvious. The officers of a corporation are generally elected by a vote of the shareholders. Every shareholder has a voice in their appointment, and may insist that they shall represent the corporation when duly appointed. If an officer is guilty of a breach of duty he may, in many cases, be removed by act of the corporation; but no minority of the shareholders has any authority to restrain his action, or remove him and appoint another officer in his place. Nor can a court of chancery interfere at the suit of a portion of the shareholders and remove an offending officer, or even enjoin him generally from acting for the corporation, unless this be essential to the protection of the corporate rights; as, for example, where the directors have conspired to defraud the corporation, or have otherwise shown themselves to be totally unfit to be intrusted any longer with the management of the company's affairs. The court must ordinarily confine its remedy to the redress of the specific wrongs which have been charged."

But the case before us is not an ordinary one, and perhaps it may be doubted that many such histories of fraud will be found in the conduct of human affairs. It is difficult to imagine a case more thoroughly saturated with fraud than this which was presented to the district court on the application for the appointment of a receiver. Four shareholders of two small corporations, which were paying handsome dividends, obtained control of the majority of the stock, and elected their own officers. These four conspirators, instead of paying $500 a month dividends which the corporations were earning, proceeded to put that money into their own pockets. They kept false books to deceive the shareholders. They pretended to buy for the corporations an absolutely worthless franchise, when they already owned two good and valid franchises, which were more than ample for the same purpose. They gave the corporations' notes for this worthless franchise, and mortgaged all of the property of the corporations for the purpose of having the mortgage foreclosed and the property of the corporations wiped out. It is needless to enlarge upon these facts; they are all set forth in the statement preceding this

opinion. This is a story of wrecking and robbing that would make a pirate of the Spanish main exclaim, in the language of Lord Clive, "I am surprised at my own moderation." Is not interference here absolutely necessary, as Morawetz says, to the attainment of justice? Again Morawetz remarks, as quoted above, the court of chancery will not interfere at the suit of the shareholders unless this be essential to the protection of the corporate rights. We can scarcely conceive of a case where it would be more essential than it is here, for the protection of the corporate rights; for, if the interference is not had, the corporate property will be swept away from the corporations into the grasp of the conspirators. And, while the investigation into the acts of the Sommers-O'Rourke party is being made by the court, should the court allow this same band of marauders to remain in possession of the corporations and their property, and continue to convert the assets to their own use, and exercise their own pleasure as to the trusts imposed upon them? To allow such a proceeding, it seems to us, would shock the conscience of the most indifferent court. Our statute provides that "a receiver may be appointed by the court in which an action is pending, or by the judge thereof . . . . 6. In all other cases where receivers have heretofore been appointed by the usages of courts of equity." (Code Civ. Proc., § 229.) We are of opinion that the decisions of the courts sustain the doctrine of the powers and the usages of courts of equity in such a case as that which was made in the showing before the district court.

We note the following language from a very recent decision (January, 1894) of the Kansas supreme court. While the Kansas statute is broader than ours, and the case of *In re Lewis,* 52 Kan. 660, is decided largely upon the statute of that state, still the following remarks of the Kansas court are valuable, as is also the collection of authorities appended to the decision. We extract from the opinion as follows:

"By the averments of the petition it would appear that all the officers of the corporation have conspired together to divert its business to another company, and to absorb its earnings and assets, and appropriate the same to their own uses. Under those circumstances it would be useless to apply to the officers to bring

an action against themselves, and in such cases the law permits the appointment of a receiver at the instance of a stockholder. In most cases of this character no other adequate remedy exists. The appointment of a receiver is not necessarily a proceeding to dissolve a corporation, nor will it necessarily result in its extinction. The property and assets of the corporation, which are being dissipated and fraudulently absorbed, will be preserved and rightfully applied under the supervision of the court, and may be restored to the officers of the corporation, when there has been a change of officers, or when it is deemed prudent and safe to restore the property and affairs of the corporation to its duly constituted officers. (See *Bank* v. *United States etc. Tile Co.,* 105 Ind. 227; *Pike Co.* v. *Hammons,* 129 Ind. 368; *Order of Iron Hall* v. *Baker* (Ind. Sup. Ct.), 33 N. E. Rep. 1128; *Haywood* v. *Lumber Co., supra; Consolidated Tank Line Co.* v. *Kansas City Varnish Co.,* 43 Fed. Rep. 204; Morawetz on Private Corporations, § 281; Pomeroy's Equity Jurisprudence, § 1334; High on Receivers, § 313; Spelman on Private Corporations, § 1001; 20 Am. & Eng. Ency. of Law, 272.)"

We also find it stated in High on Receivers, section 313, as follows: "It has already been shown that in most of the states of this country the general jurisdiction of courts of equity over corporations has been enlarged to the extent of authorizing the appointment of receivers in behalf of creditors and shareholders."

The supreme court of Michigan (October, 1892) in *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, after reviewing the history of a fraud, which perhaps is worthy to be ranked with that of the case at bar, says: "The present case furnishes an instance of gross abuse of trust. Must the *cestui que trust* be committed to the domination of a trustee who has for seven years continued to violate the trust? The law requires of the majority the utmost good faith in the control and management of the corporation as to the minority. It is of the essence of this trust that it shall be so managed as to produce for each stockholder the best possible return for his investment. The trustee has so far absorbed all returns. What is the outlook for the future? This court, in view of the past, can give no assur-

ances. It can make no order that can prevent some other method of bleeding this corporation, if it is allowed to continue. If Lorman be removed, who shall take his place? He has the absolute power to determine. Once deposed he may elect a dummy to fill his place? There are practically but three persons concerned, Miner, Lorman, and Lorrissa Carpenter, and she has for seven years, in fraud of complainant's rights, been paid a dividend to secure her acquiescence. Who has any right to complain if ample and complete justice is awarded to Miner? Who shall be permitted to stand between him and an adequate remedy? This corporation has utterly failed of its purpose, not because of matters beyond its control, but because of fraudulent mismanagement and misappropriation of its funds. Complainant has a right to insist that it shall not continue as a cloak for a fraud upon him, and shall not longer retain his capital to be used for the sole advantage of the owner of the majority of the stock, and a court of equity will not so far tolerate such a manifest violation of the rules of natural justice as to deny him the relief to which his situation entitles him. I think a court of equity, under the circumstances of this case, in the exercise of its general equity jurisdiction, has the power to grant to this complainant ample relief, even to the dissolution of the trust relations. Complainant is therefore entitled to the relief prayed. A receiver will be appointed, and the affairs of this corporation wound up."

In the Michigan case the decision went to the winding up of the corporation; but in the case before us the receiver is only to hold until the charges of fraud are investigated. The Michigan decision is an able discussion of the powers of the court of equity in this respect, and a valuable review of decisions. It may be said here, as was said in the Michigan case, that the corporations have utterly failed of their purpose, not because of matters beyond their control, but because of the fraudulent mismanagement and misappropriation of their funds. An equal, if not greater, mismanagement and misappropriation has been done by the officers of the corporations who are here made defendants, and whose acts are sought to be restrained and set aside and declared null and void. We also

find the same general subject mentioned in the following language in Waterman on the Law of Corporations, volume 2, section 356: "The power to appoint a receiver is necessarily inherent in a court which possesses equitable jurisdiction. It is exercised when an estate or fund is in existence and there is no competent person entitled to hold it; or the person so entitled is in the nature of a trustee and is misusing or misapplying the trust; or the property is about to be removed beyond the reach of the court; and generally when it is necessary to secure rights and prevent a failure of justice. The property is thus placed in the hands of an officer of the law in order that it may be under the protecting care and control of the court and be delivered unimpaired to the persons to whom it is legally ascertained to belong." (See, also, *Ranger* v. *Champion C. P. Co.*, 52 Fed. Rep. 611; Morawetz on Private Corporations, § 642.)

Upon questions of equity and jurisdiction aid is always found in the records of the courts of chancery of New Jersey, and from a decision rendered in May, 1894, by that learned court we quote as follows. "The power of this court to appoint a receiver of a corporation either because it has no properly constituted governing body or because there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, I think must be regarded as settled, but I think it is equally well settled that this power is subject to certain limitations, namely, it must always be exercised with great caution, and only for such time and to such an extent as may be necessary to preserve the property of the corporation and protect the rights and interests of its stockholders. As soon as a lawfully constituted and competent governing body comes into existence, whether it is brought into existence by an adjustment of the dissensions or by the election of a new body, and such body is ready to take possession of the property of the corporation, and proceed in the proper discharge of its duties, the court must lift its hand and retire. This is the doctrine as I understand it, which was laid down by Vice-Chancellor Malins in *Featherstone* v. *Cooke*, L. R. 16 Eq. 298, and *Auxiliary Co.* v. *Vickers*, L. R. 16 Eq. 303, and which was approved

by Chancellor Runyon in *Einstein* v. *Rosenfeld,* 38 N. J. Eq. 309, and by Chancellor McGill in *Archer* v. *Water Works Co.,* 50 N. J. Eq. 33; 24 Atl. Rep. 508." (*Edison* v. *Edison United Phonograph Co.,* 29 Atl. Rep. 197.)

It is true, of course, that the power must be exercised with great caution, but we are of the opinion that the most scrupulous caution would not cause a court to hesitate in the matter which was before the district court. Furthermore, the district court did not go any further in the appointment than was necessary to preserve the property of the corporations and protect the rights and interests of its stockholders, as was stated in the New Jersey case.

It does not seem necessary to go further in this discussion. The facts of this case will not afford a precedent in the future, for any imprudent or unauthorized appointment of a receiver for corporations, or the unwise withdrawal of the business of a corporation from the management of its duly elected and lawfully acting trustees. The case is a precedent only as to its own facts. Here the object of its existence, and, indeed, the practical existence itself, of the corporations are being totally destroyed by the unlawful (not to use a stronger term) acts of its managers; and one object at least of the action in the district court is to set aside and prevent such unlawful acts of such managers; and the action itself is against such unlawfully acting persons. If they are allowed to go on in their course which they are pursuing the corporations are to be totally wrecked, their funds are to be embezzled, and their property is to be taken from them by a fraudulent conspiracy of the managers whose position is one of trust towards the plaintiffs in the action in the district court.

Under such a vigorous showing of facts we believe that the decisions of the courts of equity uphold the powers and usages of those courts to interfere by a receivership. See the cases cited in this opinion and the cases referred to in those citations.

We are therefore of the opinion that the writ of certiorari must be dismissed, and it is so ordered.

*Writ dismissed.*

PEMBERTON, C. J., and HUNT, J. concur.