(May 27, 1903.)

## GIBBS v. MORGAN, JUDGE.

[72 Pac. 733.]

RECEIVER—CORPORATION—SUIT OF STOCKHOLDER—COURTS OF EQUITY.

1. On *certiorari* to review the appointment of a receiver of a corporation, the only question to be considered is the jurisdiction of the court or judge to make such appointment.

2. *Held,* under the application in this case for the appointment of a receiver that the judge had jurisdiction to appoint one *pendente lite* under the provisions of subdivision 6 of section 4329, Revised Statutes.

3. As far as possible courts of equity should adapt their practice to the existing conditions of the business world and apply their jurisdiction to the changed conditions and cases arising thereunder, and should not too strictly adhere to forms and rules established under different circumstances and decline to administer justice and enforce rights for which there is no other remedy.

(Syllabus by the court.)

CERTIORARI to the judge of the first district court of the state of Idaho to review the action of said judge in appointing a receiver for a corporation *pendente lite.* Writ dismissed.

The facts are stated in the opinion.

Edwin McBee and C. S. Voorhees, for Plaintiff.

It cannot be said that a stockholder in a corporation has such an "interest in the property or fund" by virtue of his being such holder of stock as would furnish a sufficient predicate for the appointment of a receiver for such corporation, on the application of such stockholder, and we do not think that it has

ever been held that this subdivision of section 4329 was ever before successfully invoked to secure the appointment of a receiver for an admittedly and confessedly solvent corporation. (*New Birmingham Iron etc. Co. v. Blevins,* 12 Tex. Civ. App. 410, 34 S. W. 828.) "The refusal of the officers of a corporation to allow a stockholder to examine its books is not a sufficient ground for the appointment of a receiver." (*Original Vienna Bakery etc. Co. v. Heissler,* 50 Ill. App. 406; *Laurel Springs Land Co. v. Fougaray,* 50 N. J. Eq. 886, 26 Atl. 886; *Edison v. Edison Phonograph Co.,* 52 N. J. Eq. 620, 29 Atl. 195.) "So long as the directors of a corporation keep within the scope of their powers, and act in good faith, and with honest motives, their acts are not subject to judicial control or revision. Where the majority keep within the scope of the powers of the corporation, no court has power to substitute the judgment of a minority of the directors for that of the majority." (*Little Warrior Coal Co. v. Hooper,* 105 Ala. 665, 17 South. 118.) The most that can be said of the charges in the complaint is that they go merely to negligence or failure to perform a duty, and we do not doubt but this court will find that the evidence lamentably fails to establish any such negligence or failure. Even had fraud been properly charged in the complaint, the record is so entirely barren and destitute of proof thereof, that such charge would necessarily go for naught. "Fraud cannot be established by mere proof of negligence or failure to perform a duty, although such failure may be sufficient to establish a liability." (*Spokane v. Amster-*.*damsch Trustees Kantoor,* 18 Wash. 81, 50 Pac. 1088.) In cases of this kind insolvency is the jurisdictional fact. (*Brundage v. Home Savings etc. Assn. of Minneapolis,* 11 Wash. 287, 39 Pac. 666.) "Facts must be alleged showing that the adverse party is unable to respond to a decree against him by reason of his being insolvent." (17 Ency. of Pl. & Pr., p. 725; *Sweeney v. Mayhew,* 6 Idaho, 455, 56 Pac. 85; *McGeorge v. Big Stone Gap Imp. Co.,* 57 Fed. 262; *Newfoundland Ry. Const. Co. v. Schack,* 40 N. J. Eq. 222, 1 Atl. 23; *Denike v. New York etc. Co.,* 80 N. Y. 599; *Neall v. Hill,* 16 Cal. 146, 76 Am. Dec. 508; *French Bank Case,* 53 Cal. 495; *Fischer v. Superior Court,* 110

Cal. 129, 42 Pac. 561; *People's Investment Co. v. Crawford* (Tex. Civ. App.), 45 S. W. 738; *Havemeyer v. Superior Court,* 84 Cal. 327, 18 Am. St. Rep. 192, 24 Pac. 121, 10 L. R. A. 627; *Harrison v. Hebbard,* 101 Cal. 152, 35 Pac. 555; Beach on Receivers, sec. 403 et seq.)

Willis Sweet and A. A. Crane, for Respondent.

In the matter at bar, the district judge has appointed a receiver. A writ of review has been issued by this court based upon the theory, not that the court was not in possession of the facts which justified a receiver, but that the court was without authority to appoint a receiver under any circumstances whatever. In defending the appointment of this receiver and representing the judge of the first judicial district, .we take the position that a court of equity has authority to appoint a receiver for a corporation if existing facts and conditions justify it. We take the position that the facts and conditions in this case justified the appointment of the receiver by the defendant, the judge of the first judicial district of this state. The statutes of Idaho, California, Montana and Washington, as to subdivision six (6) of section forty-three twenty-nine (4329) are framed in substantially the same words. Under this provision a court of equity has the power to appoint a receiver, or to grant any other equitable relief which the exigencies of the case require, and no case is an authority in any other case, except so far as the authority tends to demonstrate that the power questioned does reside in courts of equity; but that whether or not it will be exercised depends entirely upon the facts developed in each case. (*State v. Second District Court Silver Bow Co.,* 15 Mont. 324, 48 Am. St. Rep. 682, 39 Pac. 316, 27 L. R. A. 392; *Archer v. Waterworks Co.,* 50 N. J. Eq. 33, 24 Atl. 508; *Consolidated Tank Line Co. v. Kansas City Varnish Co.,* 43 Fed. 204; *Ranger v. Champion Cotton Press,* 52 Fed. 609 et seq., 615; *State v. Second District Court,* 22 Mont. 220, 56 Pac. 219.) As to the inherent power of courts of equity to grant relief in such cases: *Miner v. Ice Company,* 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Cameron v. Groveland Imp. Co.,* 20 Wash. 169, 72 Am. St. Rep. 26, 54 Pac. 1128. Nearly all

of the business of the English speaking world is now transacted through corporate management, great or small, and modern decisions meet the situation. (*Columbian Athletic Club v. State,* 143 Ind. 98, 52 Am. St. Rep. 407, 40 N. E. 914, 28 L. R. A. 98; Clark and Marshall on Corporations, sec. 566; 3 Pomeroy's Equity, secs. 1333, 1334.)

SULLIVAN, C. J.—This is a writ of review to review the action of the judge of the first judicial district in appointing a receiver of the Idaho Lumber Manufacturing Company, a corporation, organized and existing under the laws of the state of Idaho, with its principal place of business at Post Falls, Kootenai county.

The application for a receiver was made upon notice in the case of H. M. Strathern, plaintiff, v. The Idaho Lumber and Manufacturing Company, a corporation, Daniel MacGillis, C. D. Gibbs and J. K. Stack, copartners, doing business under the name of MacGillis & Gibbs, and Daniel MacGillis, C. D. Gibbs, W. A. Armstrong, James McNair, stockholders of the above-named corporation, and C. D. Gibbs, president of said corporation, defendants, and was made upon the complaint and certain affidavits and exhibits filed by the plaintiff therein and counter-affidavits and exhibits presented by the defendants. Upon the showing thus made said judge appointed a receiver, and on the application of the defendants in said suit a writ of review was granted directing said judge to certify the record of his proceedings and doings in the appointment of such receiver to this court that the same might be reviewed and ascertained if he had exceeded his jurisdiction in making such appointment. In response to said writ there has been certified to this court a transcript of the record upon which said matter was heard. It appears from the record that said Idaho Lumber and Manufacturing Company was the successor of the Spokane and Idaho Lumber Company, the capital stock of which last-named corporation was owned by said H. M. Strathern and one C. M. Patterson. An agreement was entered into by which the plaintiffs, Daniel MacGillis and C. D. Gibbs, purchased the stock of said Patterson in said Spokane and Idaho Lumber

Company, and thereafter the Idaho Lumber and Manufacturing Company was incorporated and became the successors to the former corporation's property and assets.

The plaintiff corporation was organized on the twenty-fifth day of November, 1901, with a capital stock of $50,000, divided into five hundred shares of the par value of $100 each. Said Daniel MacGillis subscribed for one hundred and twenty-five shares thereof; said C. D. Gibbs subscribed for one hundred and twenty-four shares thereof; said W. A. Armstrong subscribed for one share thereof; said H. M. Strathern subscribed for two hundred and forty-nine shares thereof; said James McNair subscribed for one share thereof.

The articles of incorporation specifies the purposes of said corporation. Among them are the purchase and sale of lands, timber and the products into which timber may enter, logging, lumbering, manufacturing, erecting and equipping sawmills, railroads, steamboats, docks, improvement of streams and numerous other kinds of business not necessary to detail here.

It was provided that the number of directors of said corporation should be five, and the five persons above named as shareholders were named in said articles as directors for the first year. Said board of directors was organized by electing said C. D. Gibbs president, W. A. Armstrong vice-president, and the plaintiff, H. M. Strathern, secretary, treasurer and manager. Said corporation took over the property of said Spokane and Idaho Lumber Company, consisting of a sawmill and appliances, millsite, water power, planing-mill and other property situated at Post Falls, aforesaid.

After said Strathern had been so elected manager, and in January, 1902, he took charge of said sawmill and overhauled and repaired the same until about May 1, 1902.

In the meantime a contract had been entered into by said corporation with the firm of MacGillis & Gibbs to saw lumber and put it on the cars for them at $5 per thousand, and from about May 1, 1902, to July 3d of the same year said corporation continued to saw lumber under said contract, which contract was not in writing, and the record shows that there is a dispute as to its terms. However, on July 3, 1902, said contract was

superseded by a written contract between said corporation and the firm of MacGillis & Gibbs, which firm on said last-named date was composed of said MacGillis and Gibbs and one J. A. Stacks.

Said last-mentioned contract is a lease in effect. MacGillis, Gibbs and said Stacks, as copartners under the name of Mac-Gillis & Gibbs, are named as the first parties, and H. M. Strathern the second party. The first parties thereby agreed to pay the second party $5,000 on the thirty-first day of December, 1902, and pay all operating expenses of said Idaho Lumber and Manufacturing Company from the first day of May, 1902, to the first day of January, 1903, and each party to pay one-half of all construction done and improvements made by said company during said period, and as a part of this consideration, the second party agreed to perform, without further considera-tion, all of the duties of general manager of said corporation, and devote all of his time and best energies to the interests of said company as such manager, from May 1, 1902, to January 1, 1903. Said contract contains other provisions not necessary to be set forth in this opinion.

It is not quite clear as to why said contract required said general manager to devote his entire time and energies to said duties from May 1, 1902, to July 3, 1902, as that period of time had already expired when said contract was made, but it is clear that said contract was intended to cover the time from May 1, 1902, to January 1, 1903.

It appears that shortly after July 3, 1902, Gibbs began to find fault with Strathern's management of the mill and finally, on about September 1, 1902, Gibbs requested Strathern to re-sign his position as general manager and informed him that if he would resign it would save him (Gibbs) the trouble of sending to Milwaukee for MacGillis, to the end that they might remove him as manager by a vote of the board of directors. Strathern refused to resign and MacGillis was sent for and on September 17, 1902, a meeting of the directors was held to remove him; Gibbs then having three directors out of five pres-ent, Strathern thereupon resigned, and Gibbs was elected to fill his place. From that date to December 30, 1902, when the

mill burned, Gibbs had full control and management of the affairs of said corporation. During that period of time Strathern remained secretary and treasurer of said corporation, but apparently was entirely overlooked as a half owner of the capital stock of said corporation. On October 9, 1902, said Gibbs discharged the bookkeeper that Strathern had employed, and who had acted as such under his administration of the affairs of said corporation, and appointed another, who, to say the least, was not a very partial friend of Strathern's. It is averred by Strathern that said last-mentioned bookkeeper denied him the right to inspect the books of said corporation, and refused to furnish him data therefrom to enable him to make his report as secretary and treasurer of said corporation to the annual meeting of the stockholders as required by the by-laws of said corporation. This is denied by both Gibbs and the bookkeeper, but from the whole record we are satisfied that Strathern has not been accorded the right and privileges that he has under the law to inspect said books; however, that of itself would not be a sufficient ground for appointing a receiver, but it is a circumstance that a court of equity may take into consideration on an application to appoint one.

The mill burned on December 30, 1902, and the time fixed for the stockholders' annual meeting was January 13, 1903. As to what occurred at the annual meeting the parties do not exactly agree. Gibbs in his affidavits admits that no reports were made, and asserts that "said reports, or any reports, were not duly requested, or requested in any way, by the stockholders present at said meeting." That statement is equivocal and evasive, as it is not claimed that said reports were requested by the stockholders present, but that such request was made by two of the stockholders present, Strathern and Connor. Gibbs also admits that no election of officers took place at said annual meeting. Armstrong, a holder of one share of stock, and who is in the employ of MacGillis & Gibbs, states in his affidavit that he was present at said stockholders' annual meeting, and that upon the motion of MacGillis that the various reports required by the by-laws be postponed until after the loss by fire be adjusted was adopted, and that Strathern either voted for

the motion or contented himself with standing mute in that behalf.

In the affidavit of Connor, which is adopted by Strathern as part of his affidavit, is set forth what they claim took place at said annual meeting of stockholders, and in that point his affidavit is as follows: "That he attended a meeting of the stockholders of the Idaho Lumber and Manufacturing Company in their office at Post Falls, Idaho, on January 13, 1903; that he held a proxy from one James McNair, a stockholder in that company. There were present at that meeting C. D. Gibbs, Daniel MacGillis, W. A. Armstrong, H. M. Strathern and myself. The office was cleared of all others, including the bookkeeper of the company, before the meeting was held. The minutes of a preceding meeting were read by Mr. Strathern from the book of minutes which was in his possession. Mr. MacGillis then suggested that the next step would be the election of officers for the ensuing year. I suggested that the first thing to do was to hear reports of the officers of the company for the preceding year. Mr. Gibbs stated that no reports had been made or were ready to present at that meeting, because of the fact that the property had been destroyed just a day or two before the close of the year 1902, and for the further reason that a former bookkeeper had been inefficient, incapable, careless, and, among other things, dishonest, and that the books were in a very bad condition; that their then bookkeeper was still at work at the books but had not brought them up to date, and they were in no condition to be seen or examined by any person interested in the affairs of the company. I then suggested that the part of the accounts relating to the business between Mr. Strathern, Mr. Gibbs, Mr. MacGillis and others should be presented and Mr. Strathern be allowed to examine it, and Mr. Gibbs replied that the books were not in such a condition that anybody could derive any definite or reliable information from them. For that reason he expressed a wish that action be delayed until the bookkeeper should have time to post his books. A minute of this was made in the records of the company by Mr. Strathern, was read to the stockholders and was approved by Mr. Gibbs as president of the company.

The stockholders' meeting then adjourned until such time as the books could be brought up to date and properly posted."

It would seem that no effort was made to hold said annual meeting. The stockholders met, the reports of the officers called for, and at the request of Gibbs the said annual meeting was adjourned until the books should be put in proper shape and brought up to date, and at that time the understanding of Strathern and Connor was that the annual meeting would be held later. They had reason to believe, and did believe, that the annual meeting was only deferred to a later date when it would be held and reports made. Connor swears that the meeting then adjourned until such time as the books could be brought up to date and properly posted. It is a little surprising that the "well-equipped" bookkeeper appointed by Gibbs could not have brought said books up to date by January 13, 1903, he having been installed as bookkeeper on October 9, 1902, over three months prior to the annual meeting.

The annual meeting of stockholders having been postponed and the stockholders' meeting adjourned, MacGillis, Gibbs and Armstrong held a meeting of the directors as claimed by Gibbs and Armstrong, at which they elected Gibbs as president and manager, Armstrong as vice-president, and MacGillis as secretary and treasurer, thus not permitting Strathern, who owned half of the stock of said corporation, to hold any office whatever therein. In regard to the holding of a meeting by the board of directors after the stockholders' meeting had adjourned, Armstrong in his affidavit states as follows: "Affiant further says that on the thirteenth day of January, 1903, the directors of said company held their annual meeting, at and during which a majority of the said board being present, and notice of said meeting having been theretofore given to every member of said board, proceeded to the election of officers for the year next ensuing, at which election C. D. Gibbs was elected president and manager of said corporation, Daniel MacGillis was elected secretary and treasurer of said corporation, and affiant was elected vice-president of said corporation."

In Connor's affidavit, which is adopted by Strathern as a part of his own affidavit, the following appears, to wit: "I took

dinner with Mr. Strathern shortly after the adjournment of the stockholders' meeting, and shortly after dinner a message was sent, as I was informed and understood, by Messrs. Gibbs, MacGillis and Armstrong, requesting the attendance of Mr. Strathern again at the office of the company and stating, among other things, that they were about to hold a directors' meeting, but that no one holding a proxy for any of the stockholders would be permitted to be present. I advised Mr. Strathern to send word that when the reports of the affairs of the company had been prepared and submitted, as required by their by-laws, it would then be time to hold a directors' meeting, and not before. He did this and himself refused to attend the directors' meeting."

The by-laws of said corporation provide for an annual meeting of the stockholders on the second Tuesday in January, and that if such meeting is not held, the directors shall hold over until their successors are elected or appointed. And it is also provided that the board of directors shall hold an annual meeting immediately following the annual meeting of the stockholders in each year. It is also provided that a meeting of the board may at any time be called by the president or any two members of the board by causing personal notice thereof to be served upon the directors, at least one day before the date of the proposed meeting.

Keeping the above provisions of the by-laws in view, we will recur to the facts of holding said annual directors' meeting. The stockholders' annual meeting had adjourned until the expert bookkeeper should untangle and post the books of the corporation, and I think, tacitly, until the loss by fire should be adjusted, and without making any effort to elect a board of directors. It is clear that Strathern and Connor understood and had ample reason therefor that matters would remain *in statu quo* so far as directors and officers of the corporation were concerned, until the annual meeting should be held and proper reports of the business of the corporation were made.

They left the office where the stockholders met and Connor went to take dinner with Strathern. After dinner a message was sent by MacGillis, Gibbs and Armstrong to Strathern, stat-

ing that they were about to hold a directors' meeting, but that no one holding a proxy for any of the stockholders would be permitted to be present. Connor thereupon advised Strathern to send word that when the reports of the affairs of the company had been prepared and submitted as required by the by-laws it would then be time to hold a directors' meeting, and not before. Strathern followed that suggestion and refused to attend said meeting.

The by-laws provide that an annual meeting of the board of directors must be held immediately after the annual meeting of the stockholders. But as no annual meeting was held and the election of directors postponed, the old board of directors were not authorized to hold the annual meeting of directors provided for by the by-laws, to be held immediately after the annual meeting of the stockholders for the election of officers of the new board.

The proceedings of Gibbs, MacGillis and Armstrong in pretending to hold the annual meeting of the directors and the election of officers for the ensuing year was absolutely void. That being true, Strathern was still the secretary and treasurer of said board.

But it is contended that as each director must be a stockholder, and as there were only five stockholders, the old board must necessarily have been re-elected. While the first condition is true, the second is not necessarily so. For it seems plain from the record that as one-half of the stock was represented by the Gibbs-MacGillis faction and the other half by Strathern, no election could have taken place unless one faction had voted with the other. In case they refused to do so, of course the old board would hold over, and in that event the old board perhaps might have held the annual meeting as provided by the by-laws. The holding of said pretended meeting of the directors was evidently an afterthought on the part of Gibbs and MacGillis, as they did not notify Strathern at said meeting that they intended to hold a directors' meeting, but sent a message or notice to him that a meeting of the board of directors would be held that afternoon, thus not giving him a day's notice thereof as required by the by-laws.

The receiver was appointed under subdivision 6 of section 4329, Revised Statutes. Subdivisions 5 and 6 of that section are as follows:

"Sec. 4329. A receiver may be appointed by the court in which an action is pending or has passed to judgment or by the judge thereof. . . . .

"5. In the case when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;

"6. In all other cases where receivers have heretofore been appointed by the usages of courts of equity."

Counsel for plaintiffs contend that a receiver for a corporation cannot be appointed by a court of equity under either of the provisions of said section, except for those grounds enumerated in said subsection 5; that is, in case a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights. And that neither of those grounds are shown by the record, therefore the court was without jurisdiction to appoint said receiver.

The provisions of said subsection 5 particularly authorize the appointment of a receiver in either of the four cases therein named, and in the case at bar the corporation will not be dissolved by the appointment of a receiver. The receiver is not appointed to wind up the corporation. He was appointed to take charge of the property left after the fire and to receive the insurance money to be paid for the loss by fire and hold it until the further order of the court. The corporation is not in active operation and the capital stock of the corporation is equally divided between the contending factions. The most of the assets of the corporation is in cash, and under the showing made we think the judge had jurisdiction to appoint a receiver.

In *Archer v. Waterworks Co.*, 50 N. J. Eq. 33, 24 Atl. 508, the court says: "If the present board of directors of the company, and they are parties to this suit, continue their dissensions, so that the affairs of the company are not speedily attended to, upon a proper application I will care for the property pending the determination of the suit, through the instrumentality of a receiver, etc."

Upon the point that courts of equity will interfere when the facts justify, and furnish such relief as the necessity of the case demands, see *Consolidated Tank L. Co. v. Kansas City V. Co.*, 43 Fed. 204.   (*Ranger v. Champion*, 52 Fed. 609.)

Subdivision 6 provides that a receiver may be appointed in all other cases when receivers have heretofore been appointed by the usages of courts of equity.

We think the provisions of the latter subsection are broad enough to authorize the appointment of a receiver under the facts shown in the case.  The grounds stated in the fifth subsection are not the only ones for which a receiver may be appointed, and it was not intended by said provisions to prohibit the appointment of a receiver for a corporation on any other ground than those therein set forth.  For by the sixth subdivision of said section a court of equity has the power to appoint a receiver in the case of a corporation or to grant any other equitable relief which the exigencies of the case may require.

Under a statute identical with said subsection 6 of section 4329, Revised Statutes, the Montana supreme court in *State v. Second Judicial District Court*, 15 Mont. 324, 48 Am. St. Rep. 682, 39 Pac. 316, 27 L. R. A. 392, held that the court had jurisdiction to appoint a receiver for a corporation.  The court in that case refers to the *French Bank Case*, 53 Cal. 550, and says: "In the California case an important element in the decision, as it appears, was that the appointment of a receiver acted as a dissolution of the corporation," and further on says: "The receiver is not to wind up the corporation under his appointment; he is simply to manage the affairs of the same while charges of the most outrageous frauds of the managers and controllers are being investigated in the trial of the action." In that case the court quotes, with approval, from the case of *Edison v. Edison Phonograph Co.*, 52 N. J. Eq. 620, 29 Atl. 195, relied upon by counsel for plaintiff.

Courts of equity have the inherent power to grant relief upon proper application in such cases.  (*Miner v. Belle Isle Ice Co.*, 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412; *Cameron v. Groveland Imp. Co.*, 20 Wash. 169, 72 Am. St. Rep. 28, 54 Pac. 1128.)

Clark and Marshall, in their work on Private Corporations, section 556, hold that there may be circumstances under which a court of equity may appoint a receiver and wind up a corporation at the suit of a stockholder even in the absence of a statute. Those authors say: "Whether a court of equity may appoint a receiver in a stockholder's suit, not for the purpose of dissolving the corporation, but merely for the purpose of preserving the assets of the corporation and preventing irreparable loss or injury pending the suit, is a very different question; and it is well settled that such power exists as it does in case of a partnership if the circumstances render it necessary. If it were otherwise, a stockholder would often be practically without any adequate remedy." And they proceed to say that under statutes in some states, and independently of statutes in others, the court may appoint a receiver in a stockholder's suit upon proper application.

We think the position there taken is amply sustained by modern authority. In *Dodge v. Woolsey,* 18 How. 331, 15 L. ed. 401, and authorities above cited; also *Sternberg v. Wolff,* 56 N. J. Eq. 389, 67 Am. St. Rep. 494, 39 Atl. 397, 39 L. ed. 762.

*Sweeny v. Mayhew,* 6 Idaho, 455, 56 Pac. 85, a case decided by this court, is cited by counsel for plaintiffs as supporting their contention. In that case it was held that the facts did not justify the court in appointing a receiver. The court says: "We have examined the evidence for the purpose of ascertaining whether the appointment of a receiver was authorized by the showing made in the particular case pending in the district court, and we are fully convinced that, by the showing then made, plaintiff's case had been fully met by both allegation and proof, and that on the same kind of showing the plaintiff is entitled to no part of the relief demanded by him and the appointment of the receiver complained of was unauthorized."

In that case the equities of the bill were all fairly and squarely met and denied without reservation or equivocation by the answer, and the affidavits offered sustained the answer.

The *French Bank Case, supra,* is one of the strong cases in support of the plaintiff's contention. The doctrine of that case

is justly criticised by Mr. Freeman in his note to the *Franklin Bank Case,* 19 Am. Dec. 430.

The early doctrine that the affairs of a corporation could not be inquired into except by permission of the attorney general, and that courts of equity should not interfere with the power and authority of the directors of a corporation because that would result in its dissolution has been modified to meet existing conditions.

A large part of the business of the world is done through corporations, and it was held in *Columbia Athletic Club v. State,* 143 Ind. 98, 52 Am. St. Rep. 407, 40 N. E. 914, 28 L. R. A. 727, that the courts of equity should adapt their practice as far as possible to the existing state of society, and apply its jurisdiction to all those new cases which, from the progress daily making in the affairs of men, must continually arise, and should not form too strict an adherence to the forms and rules established under very different circumstances, decline to administer justice and to enforce rights for which there is no other remedy.

Counsel for plaintiff have cited many authorities that sustain and others that tend to sustain their contention, but after a careful examination of them, the court is fully satisfied that the district court or judge has jurisdiction to appoint a receiver for a corporation *pendente lite* upon a proper application under subdivision 6 of section 4329, Revised Statutes, and that the facts presented by the record warranted him in appointing one pending a settlement of the corporation's affairs and the adjudication of the rights of the stockholders by said suit. We are therefore of the opinion that the writ of *certiorari* or review must be dismissed and it is so ordered.

Costs of this proceeding are awarded to the defendant.

Ailshie, J., concurs.

Stockslager, J., expresses no opinion.