# Wright v. Wright.

*Bill to Reform Contract, and for An Accounting.*

(Decided January 23, 1913. 60 South. 931.)

1. *Reformation of Instruments; Adequacy of Legal Remedy; Jurisdiction.*—Equity will entertain a bill to correct a contract which through a mutual mistake obligated the complainant to pay five dollars per cubic feet, instead of $5.00 per hundred cubic feet for railroad construction work and to recover the balance due on a chattel mortgage executed by the respondent for money advanced to enable him to perform the contract, where the respondent is insolvent and the amount of such balance depends upon the dealings under the contract; complainant having no other adequate remedy, since a court of law must hold him to the letter of the contract.

2. *Receivers; Appointment; Review.*—Where a receiver was appointed in such instance by an order of the register and such order and appointment was heard by the chancellor de novo with all the parties represented, the appointment will be reviewed as if made by the chancellor after due notice in the first instance.

3. *Same; Grounds.*—Where an insolvent debtor takes the advantage of a clerical error in a contract and claims remuneration at $5.00 per cubic foot for that which he contracted to do at five cents per cubic foot in order to avoid repayment of the money borrowed and secured by a proper mortgage and where he is in possession of the mortgaged property, which consists in large part of live stock in need of care and which is encumbered to its full value, and where he has disposed of some of such property and has threatened to move his

other property away a receiver should be appointed at the instance of the mortgagee.

4. *Same.*—A receiver should never be appointed where any other remedy will afford adequate protection to the applicant, or where it does not appear that without it the applicant will sustain irreparable loss.

APPEAL from Conecuh Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by J. W. Wright, Jr., against E. W. Wright, to correct and reform a contract, for an accounting and a foreclosure of a mortgage and for a receiver. From a decree overruling demurrers to the bill and confirming the appointment by the register of a receiver, respondent appeals. Affirmed.

W. K. TERRY and W. T. STEWART, for appellant. The appointment of the receiver was by the register in vacation without notice to appellant under section 5726, Code 1907, and on appeal the chancellor confirmed it and overruled demurrers to the bill. The bill is under section 5727, Code 1907, and an appeal will lie from the order of the chancellor confirming the appointment of a receiver by the register.—*Meyer v. Thomas,* 131 Ala. 111; section 2840, Code 1907. It is proper for the court to consider the demurrers as this is the usual way to test the sufficiency of the bill for the appointment of a receiver.—*Smith et al. v. Teague,* 119 Ala. 305; *Pollard's Case,* 122 Ala. 409; *Schilper v. Brock,* 124 Ala. 624; *Martin's Case,* 111 Ala. 656. Under these authorities the bill did not make out a case for the appointment of a receiver.—*Ft. Payne Co. v. Ft. Payne C. & I. Co.,* 96 Ala. 478; High on Receivers, pp. 22 and 25; 100 Ill. App. 294. The court should be very careful before taking the property of a person from him and putting it in the hands of another, even though he be an officer of the court.—*Warren v. Pitts,* 114 Ala. 65;

[Wright v. Wright.]

*Gilreath v. Union B. & T. Co.,* 121 Ala. 204; *Moritz v. Miller,* 87 Ala. 331. No sufficient showing was made for reforming the contract.—34 Cyc 910, 911 and 915; *Turner v. Kelly,* 70 Ala. 85; *Pearson v. Dancer,* 144 Ala. 424.

RABB & PAGE, for appellee. A register may appoint a receiver on a proper showing.—Section 5726, Code 1907; 34 Cyc. 131. If the receiver was improperly appointed the motion should have been to discharge the receiver, not to dissolve the receivership—*Jones v. Ewing,* 56 Ala. 360; *Jacobi v. Goetter-Weil,* 74 Ala. 427. The appointment of a receiver is a matter of sound discretion and the fact that the chancellor heard it de novo will cause this court to treat the appointment as if made by the chancellor after due notice.—*Meyer v. Thomas et al.,* 131 Ala. 111. The court had general jurisdiction and the bill showed that the danger in an injury sought to be averted was real and pressing.— *Ex parte Walker,* 25 Ala. 81; *Micou v. Moses,* 72 Ala. 439. The allegations of the bill were entirely sufficient. —*Culver v. Dyer,* 129 Ala. 607; *Scott v. Ware,* 65 Ala. 171; *Warren v. Pitts,* 114 Ala. 65; *Watts v. Womack,* 44 Ala. 607; 34 Cyc. 57; *Jackson v. Hooper,* 107 Ala. 65; *Watts v. Womack,* 44 Ala. 607; 34 Cyc. 57; *Jackson v. Hooper,* 107 Ala. 634. It is elementary that courts of chancery will reform written instruments under the allegations here made.—*Berry v. Sowell,* 72 Ala. 14; *Parker v. Parker,* 88 Ala. 362; *Tillis v. Smith,* 108 Ala. 267; *Moore v. Tate,* 114 Ala. 582.

DE GRAFFENRIED, J.—The appellee made a contract to do certain railroad construction work, and the appellant was one of his sub-contractors. In his contract with the railroad company, it was agreed that the

appellee was to receive $10 per 100 cubic feet for corduroy work. The contract between appellee and appellant is substantially in the same form as the contract between appellee and the railroad company. In the contract between appellant and appellee, however, it is agreed that appellant is to receive $5 per *cubic feet* for corduroy work.

In order that appellant might carry out his contract and perform the work which he had contracted to perform, the appellee let the appellant have some money and took a mortgage from appellant upon a certain railroad construction outfit, and upon certain live stock, to secure the payment of the debt. This property so mortgaged by appellant to appellee is all of the property of the appellant, and if the claims of the appellee are correct the property is not of sufficient value to pay the debt of appellee. If the claims of the appellant are correct, then the appellant owes the appellee nothing.

The appellee claims that when the contract was made between him and the appellant it was agreed that appellant was to receive $5 per 100 cubic feet for corduroy work, which was one-half of the amount which the railroad company was to allow the appellee for such work; and that, in preparing the written memorial of the contract, the figures "100" were, by a clerical misprision, left out of the contract, and the writing was signed by both parties without a discovery of the error.

The appellant, on the other hand, claims that there was no such agreement as that set up by appellee, but that, on the contrary, the appellee agreed to pay him $5 per cubic foot for corduroy work; and that the writing as signed by the parties, correctly states the agreement which they made. If the contention of appellant is correct, then the appellee was to pay him $5 for work for which the railroad company was to pay the appellee only 10 cents.

[Wright v. Wright.]

The bill in this case was filed for the purpose of having the above contract reformed and the above-alleged mistake corrected, for an accounting before the register for the purpose of ascertaining the amount actually due appellee by appellant, for a foreclosure of the mortgage, and for the appointment of a receiver to preserve the property pending the litigation. The register, without notice, appointed a receiver, and an appeal from his order was taken to the chancellor. When the appeal was heard by the chancellor, both sides were represented by solicitors, and affidavits presenting the claims of each of the parties to the suit, and covering the matters in controversy between them, were submitted to him for his consideration.

The chancellor, after allowing an amendment to the bill, overruled the appellant's demurrer to the bill as amended, and rendered a decree confirming the order of the register appointing a receiver.

(1) The bill alleges that the indebtedness secured by the mortgage was $3,325, owing at the time of the execution of the mortgage, and all future money or advances, of any kind, made by appellee to appellant; and that, when the bill was filed, there was $5,000.14 due appellee by appellant. The bill further alleges that this money was obtained by appellant from appellee for the purpose of carrying out his contract to construct a part of the railroad for appellee.

The question as to whether there is anything due appellee on said mortgage indebtedness depends upon the state of the account between appellee and appellant, growing out of the contract on the part of appellant to do said work. If the corduroy work was to be paid for at the rate of $5 per cubic foot, instead of $5 per 100 cubic feet, then there is nothing due appellee by appellant. As the contract, on its face, says that

the work was to be done at "$5 per cubic feet," we think it plain that, in an action of detinue, the appellant would be able to defeat the appellee's suit. In other words, the law does not furnish to appellee a plain and adequate remedy; for, if appellee's claims are correct, it is necessary for him to obtain a correction of the contract in a court of equity, in order that the written evidence of the contract may be made to speak the truth. In a court of law the appellee would be held to the letter of the contract, whether that letter be a truthful letter or not. In a court of equity he can have the contract corrected, so as to make it speak the true agreement.

The bill alleges the insolvency of appellant, sufficiently indicates the necessity for the correction of the contract, shows that the amount due appellee on the mortgage indebtedness depends entirely upon the state of the indebtedness existing between appellee and appellant, growing out of their dealings with each other under the contract which is sought to be corrected; and we can see no reason why, as a part of the controversy between the parties can be settled only in a court of equity, the entire controversy between them should not be settled in that court. The bill, as amended, contains equity.

(2) As the appellant appealed to the chancellor from the order of the register appointing a receiver, and the chancellor heard the entire matter de novo, all parties being represented, we will consider the propriety of the appointment of the receiver as if the appointment had been made, in the first instance, by the chancellor after due notice to the appellant. When the chancellor sustained the appointment of the receiver, his action was the equivalent of an appointment of a receiver in the first instance.—*Meyer v. Thomas,* 131 Ala. 111, 30 South. 89.

(3) The bill of complaint and the bill, as amended, are not sworn to on information and belief, but they are both sworn to as correct statements of facts within the personal knowledge of appellee. The bill, as amended, we think, shows that there is a reasonable probability that the complainant will ultimately succeed in obtaining the relief sought by the bill; and that there was imminent danger to the property, the subject of the suit. The bill alleges the insolvency of the appellant, and also alleges that, to avoid repaying money justly due the appellee, he is taking advantage of a clerical error in a written instrument, and claiming remuneration at $5 per cubic foot for work which he had contracted to do at 5 *cents* per cubic foot. We regard this feature of this litigation, coupled with the insolvency of the appellant, as of particular importance in determining whether the chancellor, in refusing to disturb the order of the register appointing a receiver, had evidence that there was imminent danger to the property, if left in the hands of appellant pending the litigation.

Under the allegations of this bill, verified by affidavit as we have above stated, we have an insolvent man in possession of perishable personal property—a large part of it live stock, with the consequent necessity of being fed, watered, and cared for—and which property is mortgaged to the full extent of its value to the appellee. We have that insolvent man ready and willing to defeat the appellee's claim by undertaking through a clerical misprision, to collect from appellee $5 per cubic foot for work which he had contracted to do at 5 cents per cubic foot. This claim for such remuneration savors of bad faith, and casts suspicion upon every act of appellant in and about this transaction. In fact, it gives a meaning which nothing else could give to the

other allegations of the bill of complaint, charging that the appellee, if appellant was left in control of the property, was in danger of losing his debt; and that appellant if given notice of the application for a receiver, "will move said property beyond the jurisdiction of this court."

We quote with approval the following extracts from *Hayes v. Jasper Land Co. et al.*, 147 Ala. 340, 41 South. 909: "A receiver should not be appointed at any stage of the proceedings, if any other remedy will afford adequate protection to the party applying." "The general rule is well established that the power to appoint a receiver and sequestrate property will be exercised with great caution; and a resort to this remedy can only be had in extreme cases, and where it appears that without it the plaintiff will sustain irreparable loss."

We have quoted the above rules because, as we view this matter, the chancellor had them in mind and acted within them when he refused to disturb the order of the register in appointing a receiver. The general allegations of the bill showing the necessity for the appointment of a receiver, *considered alone,* may be subject to some criticism; but when those allegations are read in connection with the other allegations of the bill showing the actual bad faith of appellant in laying claim to remuneration at the rate of *$5 per cubic foot* for work which he had contracted to do at 5 cents per cubic foot, and the insolvency of the appellant, who is charged with having disposed of some of the property, and the character, needs, and situation of the mortgaged property are considered, a receivership pending this litigation seems to have been not only appropriate, but necessary.

[Wright v. Wright.]

While the bill of complaint does not, in words, charge that the claim of appellant for remuneration at $5 per cubic foot is made in bad faith, it does allege that, *by a mutual mistake,* the words "$5 per cubic feet" were written in the contract, when the words "$5 per 100 cubic feet" were intended; and if this is true we are not able to see how the claim of appellant for remuneration at $5 per cubic foot for the corduroy work done by him can be made the basis of a claim in good faith.

The bill shows that the appellant had completed the work which he had contracted to do for appellee; that the mortgaged property was insufficient in value to pay the mortgage debt; that the property was within 35 miles of the state of Florida and 10 miles from a railroad; that appellant had disposed of some of the mortgaged property, and had threatened to move the property away. These allegations, taken in connection with the appellant's insolvency and the character of the claim which he sets up as a defense to appellee's demand, supported, as we think all the allegations of the bill of complainant are, by affidavits appearing in the record, were sufficient to authorize the chancellor to confirm the action of the register in appointing a receiver for the property.

The decree of the court below is affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.