(93 South. 860)

HENRY et al. v. IDE et al.  (7 Div. 321.)

(Supreme Court of Alabama.  June 22, 1922.)

1. Equity ⬳150(1)—Bill of minority stockholders against corporation and majority stockholders held not multifarious.

Bill by minority stockholders against corporation and majority stockholders, the principal purpose of which was to rescue it from fraudulent conduct of officers, the accounting and other relief sought being incidental to and intimately connected with such purpose, *held* not multifarious, it not being necessary that all the parties have an interest in all the matters in controversy, but enough that each defendant has an interest in some of them, and that all are connected..

2. Corporations ⬳320(13) — Insolvency of corporation not essential for appointment of receiver.

Insolvency of corporation is not essential to appointment of receiver in action by minority stockholders to rescue it from fraudulent conduct of majority stockholders in control, especially where one of such majority owners is alleged to be insolvent, and both nonresidents.

3. Corporations ⬳320(7)—Alternative prayer for relief by dissolution held justified by bill by minority stockholders.

Alternative prayer for relief by way of dissolution, if found necessary, *held* justified by bill by minority stockholders to rescue corporation from fraudulent mismanagement by majority stockholders.

4. Corporations ⬳320(5)—Demand on directors for redress before suit unnecessary, where they are the mismanaging stockholders.

Bill by minority stockholders to rescue it from fraudulent mismanagement of majority stockholders for their own benefit need not aver demand on directors for redress, they being shown to be the mismanaging stockholders.

Appeal from Circuit Court, Calhoun County; A. P. Agee, Judge.

Bill by Henry C. Ide and others against C. B. Henry, W. I. Greenleaf, and the Profile Cotton Mills, for injunction and appointment of receiver. From a decree overruling demurrers, defendants appeal. Affirmed.

The bill is filed by E. T. Ide, Henry C. Ide, George P. Ide, Walter Dean, Frank J. Burke, James F. Crow, W. L. Quimby, Nellie O. Santer, Charlotte E. Quimby, Catherine I. Gray, William A. Ide, Milo J. Warden, George A. Warden, and the Merchants' National Bank of St. Johnsbury, Vt.

It is alleged that C. B. Henry and W. I. Greenleaf, respondents, reside in the state of New Hampshire, and that the Profile Cotton Mills, respondent, is an Alabama corporation with its principal place of business at Jacksonville, Ala. It is alleged that the complainants and the respondents named, together with certain other persons and corporations set out in paragraph 2a of the bill and made respondents, constitute all of the outstanding stockholders of the Profile Cotton Mills.

The bill avers that the Ide Cotton Mills, an Alabama corporation in which complainants, or those from whom they purchased, and respondent C. B. Henry were stockholders, in 1905 and 1908 erected mills No. 1 and No. 2 at Jacksonville, Ala.; that the cost value of the properties of said Ide Cotton Mills was not less than $1,000,000, and worth, at the time of the filing of the bill, not less than $3,000,000.

Paragraph 5 of the bill avers that on July 1, 1908, said Ide Cotton Mills issued and sold 6 per cent. bonds to the amount of $300,000. It is further averred that a large number of stockholders in the Ide Cotton Mills were residents of Calhoun county; that the board of directors consisted of 9 in number, and that the minority stockholders were represented on said board up to the month of April, 1911; that at said time respondent C. B. Henry sent the respondent W. I. Greenleaf to Jacksonville, Ala., for the purpose, alleged on information and belief, of acquiring complete ownership of the capital stock and properties of the Ide Cotton Mills; that said Henry at said time had acquired a controlling interest in the stock of said corporation; that in the year 1911 or shortly thereafter respondents Henry and Greenleaf conspired together to secure the entire control of said corporation by securing their election as officers and directors, and, after becoming such officers and directors, to operate and conduct said corporation for their own unlawful profit and to the injury of the minority stockholders, including complainants.

It is further averred that pursuant to such conspiracy said Henry and Greenleaf in April, 1911, by the use of the majority of the stock which they then owned and controlled, reduced the number of directors of the corporation from 9 to 3, and elected as directors C. B. Henry, W. I. Greenleaf, and George E. Henry; that in further pursuance of said conspiracy C. B. Henry was elected president and treasurer of said corporation, W. I.

Greenleaf, vice president and secretary, and the bookkeeper, H. V. Weaver, assistant treasurer; that subsequently said Weaver was elected a director to succeed George E. Henry, and continues as such director; that said Weaver is subservient to, and in all respects a tool of, W. I. Greenleaf and C. B. Henry; that said directors and officers have at all times remained the same and have had complete control and management of said corporation, and of Profile Cotton Mills, to which name it was changed, and have managed and controlled said corporation without any regard to the rights of the minority stockholders.

It is further averred that in 1913 respondents Henry and Greenleaf, in furtherance of said conspiracy, reduced the capital stock of the Ide Cotton Mills; that they planned to withhold all information from the minority stockholders, to allow them no representation of any kind, to declare no dividends, although large and substantial profits had been made, to refrain from holding regular meetings of directors, to refrain from making reports of the affairs of the corporation—all for the purpose of so deceiving such stockholders as to force and compel them to sell their stock at a nominal value. It is averred that Greenleaf and Henry refused to declare dividends, and to excuse the failure made false representation to stockholders as to the condition of the property and amount of profit that the corporation was making, that respondents have frequently stated that it would be many years before any dividends would be declared, and that by such means they have been enabled to buy a large amount of the stock of the corporation for nominal sums, in some instances as low as 10 cents on the dollar, and now own or control 90 per cent. of the stock of the corporation.

It is further averred that complainants have diligently sought information as to the condition of the affairs of the corporation, and that said Henry and Greenleaf have persistently refused to give such information; that some of complainants have traveled great distances to attend meetings of the stockholders, but that it has been the policy of respondents to adjourn such meetings from time to time without any just excuse therefor; that no audits or accountings have ever been made of the books of said corporation; that complainants have demanded on several occasions the right to have an inspection of said books, and that such requests were refused; that at a meeting of the stockholders on May 20, 1920, held at Jacksonville. Ala., complainants again demanded the right to have an examination and an inspection made of the books and papers, and an audit thereof, and, after refusing this request, it was agreed between complainants and said Greenleaf that the corporation would proceed to have an audit made and furnish complain-

ants with copy thereof, and that, if said audit was not commenced within 30 days complainants could have the right, at their expense, to have an independent audit made: that said period expired without said audit having been commenced, and, notwithstanding said agreement, said Greenleaf again refused complainants such right of inspection and examination; that some of complainants thereupon filed a petition for a writ of mandamus requiring said Greenleaf to allow complainants access to the books and papers of the corporation and an examination and audit thereof; that a decree was rendered granting the writ; that an appeal was taken to the Supreme Court of Alabama, where the decree was affirmed; that thereafter complainants demanded of said Greenleaf compliance with said order; that said Greenleaf refused, claiming that the time was unseasonable; that finally, upon being threatened with contempt proceedings, he agreed to allow an examination of said books and papers the following week.

It is further averred that during said examination and audit said Greenleaf has thrown many obstacles in the way and refused to furnish certain books and papers requested, that he has been compelled by citations of contempt proceedings to furnish books and papers which he has refused, and that there is now pending against him another contempt proceeding based on such refusal. It is averred that certain books and papers necessary have never been furnished, and that for this reason complainants have not been able to obtain full, accurate, and detailed information necessary for a proper accounting of the affairs of the corporation.

On information and belief it is alleged that for the past four years mills similar to those of the respondent corporation have made profits almost abnormally large; that respondent corporation admits that it made 215,000 pounds per month, which should with anything like efficient management, have amounted to a profit of $967,500 for 2½ years.

The bill alleges profits made by numerous other cotton mills situated in the same territory with respondent corporation; and avers that respondents Greenleaf and Henry, in the operation of respondent corporation, have made the same kind of profits that such other mills have made, and have failed to properly account for same, or else have been guilty of such inefficiency and incompetency as that they should be removed from further conduct of the corporation.

It is further averred that said Henry and Greenleaf have, during the past 7 years, had the corporation borrow money from Henry, paying him therefor 8 per cent. interest, although during said time money could have been borrowed at 4 per cent. It is averred that said Greenleaf has fraudulently and without authority withdrawn from the assets

of the corporation, for his individual use and benefit, more than $75,000; that said Henry and Greenleaf, in 1913 and 1914, fraudulently withdrew from the assets of such corporation $30,000 with which they purchased a farm in Calhoun county, the title to which was taken in the name of said Henry; that said Henry and Greenleaf have fraudulently set up as a charge against said corporation the sum of $195,250 under the book title of "Reserved for C. B. Henry and W. I. Greenleaf, time and expenses," which is carried upon books of the corporation as a liability; and that on September 30, 1920, said Greenleaf fraudulently withdrew from the funds of the corporation $32,000 charging the same against said reserve fund and converting the same to his own use. It is averred that on March 8, 1919, said Greenleaf withdrew $1,-500 which he, paid to H. V. Weaver, charging same against said reserve fund as "Weaver's participation in the proceeds of said corporation to April 1, 1919."

By paragraph 16 of the bill it is averred that respondents Greenleaf and Henry have executed or caused to be executed from time to time to said Henry and Greenleaf demand notes of the corporation described, aggregating $416,154.12 to Henry, and $90,000 to Greenleaf, interest on which has been paid to said Henry and Greenleaf; that, on information and belief, the corporation is not justly indebted to said Henry and Greenleaf, but that they have fraudulently received interest thereon; that it is claimed by Henry that the indebtedness evidenced by the notes to him is for cotton bought by him and sold to said corporation; that if in fact Henry did purchase cotton for or loan money to said corporation, money could have been borrowed with the collateral of the corporation at the rate of 4 per cent., and that, by purchasing said cotton and charging the corporation interest for the money used, said Henry secretly made a profit for himself.

Paragraphs 17 and 18 aver the illegal and unwarranted withdrawal by said Henry and Greenleaf of numerous sums of money from the assets of the corporation as interest, rebates, and commissions, and that said Henry claims that the corporation is due him in addition to other amounts the sum of $186,000 for advances; and it is averred that said advances were not as a matter of fact made, or that, if made, the corporation was charged 8 per cent. interest when it could have borrowed the money at 4 per cent. And it is averred that the books of the corporation have been so inefficiently and inaccurately kept that it is impossible without a thorough accounting to ascertain what has been done with the money and assets of said corporation.

By paragraph 18a it is averred that said Henry has collected from said corporation, without any lawful authority of the board of directors, $125,000 as salary as president of said corporation, when in fact said Henry did not reside in the state of Alabama, and rendered no service to said corporation.

By paragraph 18b it is averred that through negligence of respondent Greenleaf to make income tax returns, the corporation has been forced to pay large penalties.

By paragraph 19 it is averred that in furtherance of said conspiracy respondents Greenleaf and Henry formed a plan to further increase their holdings by increasing the bonded indebtedness of the corporation or by the issuance of a large amount of cumulative preferred stock, and that, in pursuance of such plan, they caused to be issued and sent to the stockholders the following notice:

"Jacksonville, Alabama, March 12, 1920. "To the Stockholders of Profile Cotton Mills:

"You are hereby notified that the regular annual stockholders meeting of Profile Cotton Mills will be held at the office of the company in Jacksonville, Alabama, at 3 :30 p. m., on the second Monday, being the 12th day of April, 1920.

"To this meeting will be submitted a proposition to issue $600,000 first mortgage bonds for refunding the outstanding 1908 $300,000 issue, for funding such other debts against the company and for such further use as the directors may deem prudent.

"There will also be submitted to this meeting a proposition for increasing the capital stock of the company by issuing $600,000 of 8 per cent. cumulative preferred stock to be used for the same purposes, in lieu of the above bond issue if the stockholders prefer to increase the capital stock instead of issuing bonds as above.
"W. I. Greenleaf, Secretary."

And it is averred that said Henry has acquired approximately 90 per cent. of said outstanding bonds of the issue of 1908, and that no information has ever been furnished to complainants as to the necessity for the issuance of the additional bonds or cumulative preferred stock; that upon a proper accounting it will be ascertained that said respondents are indebted to the corporation or have in their possession sufficient funds to more than settle the entire bonded indebtedness.

By paragraph 20 it is averred that, in accordance with the notice of said stockholders' meeting, complainants attended at the time and place named, that when the hour of the meeting arrived H. V. Weaver, the assistant treasurer, stated that he had received a telephone communication from Greenleaf that he would be unavoidably prevented from being present and for him to adjourn the meeting until the next day; that before he attempted to adjourn the meeting the said Weaver listed the stock that was present and entitled to vote; that thereupon the following proceedings took place:

"Stockholders' Meeting of Profile Cotton Mills. "Held at the office of the company on April 12, 1920, at 3 :30 o'clock p. m.

"The hour of the meeting of the stockholders having been reached, it was ascertained by As-

sistant Treasurer H. V. Weaver that the following stockholders were present in person or by lawful proxies: Walter Dean, 60 shares, represented by Mr. Borden Burr, proxy; Frank J. Burke, 6 shares, represented by Mr. Walter Dean, proxy; Geo. P. Ide, as executor of the estate of L. S. Borden, 20 shares; Geo. P. Few, 3 shares; Henry C. Ide, 40 shares; James F. Crow, 6 shares; E. T. Ide, 6 $4/_{10}$ shares; H. V. Weaver, 10 shares.

"Thereupon, at the request of the stockholders the call for the meeting was presented, said call being in words and figures as follows:

" 'Jacksonville, Ala., March 12, 1920.

" 'To the Stockholders of the Profile Cotton Mills:

" 'You are hereby notified that the regular annual stockholders meeting of Profile Cotton Mills will be held at the office of the Company in Jacksonville, Alabama, at 3:30 p. m. on the second Monday, being the 12th day of April, 1920.

" 'To this meeting will be submitted a proposition to issue $600,000 first mortgage bonds for refunding the outstanding 1908 $300,000 issue, for refunding such other debts against the company and for such further use as the directors may deem prudent.

" 'There will also be submitted at this meeting a proposition for increasing the capital stock of the company by issuing $600,000 of 8 per cent. cumulative preferred stock, to be used for the same purpose and in lieu of the above bond issue, if the stockholders prefer to increase the capital stock instead of issuing bonds as above.     W. I. Greenleaf, Secretary.'

"After waiting for an hour to ascertain whether or not a quorum could be secured, a motion was made and duly seconded that Henry C. Ide be elected chairman of the meeting of the stockholders present. All of the stock present, as noted above, with the exception of the stock represented by Mr. Few and Mr. Weaver, voted in favor of said action, Mr. Few refusing to vote and Mr. Weaver voted in the negative. Thereupon, Henry C. Ide was duly declared as the elected chairman of the meeting.

"Thereupon, upon motion duly made and seconded, Geo. P. Ide was nominated as secretary of said meeting and all of the stock present as listed above voted in favor of his election, with the exception of Mr. Weaver, who voted no, and Mr. Few, who refrained from voting. Thereupon Henry C. Ide and Geo. P. Ide, were duly declared elected chairman and secretary, respectively, of said meeting.

"Thereupon, the following resolution was introduced:

"Whereas, the regular annual meeting of the stockholders of the Profile Cotton Mills was called to be held in the office of the company at Jacksonville, Ala., on the second Monday in April, 1920, and whereas, notice of the time and place of such meeting was designated as the office of the company as the place, and 3:30 p. m. April 12, 1920, as the time, and whereas at such time upon a call of the stock being present being made, it appeared that there was not then present and is not now present a quorum of the stockholders, and whereas, under section 2 of the by-laws, it is provided that the stockholders attending the annual meeting shall have the power to adjourn from time to time until a quorum is obtained; now therefore, be it

resolved that this meeting stand adjourned until 10 o'clock a. m. Monday, May 10, 1920.

"Said resolution was duly seconded and, being put upon its passage, the following voted in favor of said resolution: Walter Dean, 60 shares, represented by Mr. Borden Burr, proxy, Frank J. Burke, 6 shares, represented by Mr. Walter Dean, proxy, Geo. P. Ide, as Executor of the estate of L. S. Borden, 20 shares, Henry C. Ide, 40 shares, James F. Crow, 6 shares, E. T. Ide, 6 $4/_{10}$ shares, Mr. Weaver voted against said resolution and Mr. Few refrained from voting.

"Thereupon, in accordance with said resolution, the chairman of the meeting declared the meeting duly adjourned until 10 o'clock a. m. Monday, May 10, 1920, at the offices of said company.       Henry C. Ide, Chairman.

"Correct: Geo. P. Ide, Secretary."

It is averred:

That the by-laws of the corporation provide that the regular annual meeting of the stockholders shall be held in Jacksonville on the second Monday of April of each year for the purpose of electing a board of directors and transaction of other legitimate business. That notice of such meeting shall be given to the stockholders 15 days prior thereto. That if no election be had at the annual meeting, another meeting shall be called by the directors, but that the stockholders attending the annual meeting shall have power to adjourn from time to time until a quorum is obtained. That—

Section 3. Special meetings of the stockholders may be called by the secretary, president or vice president, or it shall be the duty of either of these officers to call a meeting of the stockholders upon a written request of stockholders, who together hold no less than one-fourth of the capital stock. The special meetings shall be called in the same manner as the regular annual meetings and be governed by the same rules. No business other than that specified in the notice shall be transacted at the special meetings.

Section 4. At all meetings of the stockholders, each share of stock shall entitle the holder thereof to one vote, and this stock may be voted in person or by proxy written. A majority of all the shares shall constitute a quorum for the transaction of business, and a majority of the shares represented at the meeting shall govern.

It is averred that pursuant to said by-laws said stockholders' meeting was duly adjourned to convene on Monday, May 10, 1920, at 10 o'clock; that on April 12th after said stockholders meeting had adjourned and at a time and place for which no meeting had been legally called, respondents Henry and Greenleaf attempted to hold a meeting and falsified the minutes thereof so as to cause them to state that the meeting called for April 12th had been adjourned until April 13th; that said Greenleaf, Weaver, and one Few, assembled at the time said meeting was so falsely stated to have adjourned, and illegally passed a resolution authorizing the issuance of $600,000 of 8 per cent. cumulative

preferred stock; that respondents will issue and sell said stock unless restrained by injunction.

Other stockholders are invited by complainants to join in the bill.

Paragraph 21 avers that the attempted action of respondents in seeking to issue said preferred stock is illegal and void because the meeting at which said resolution was adopted was not called by the directors, that no notice of the time, place and purpose thereof was given, and that the alleged meeting was not a meeting of the stockholders.

Paragraph 22 avers that respondent Greenleaf is insolvent, and that both respondents Greenleaf and Henry are nonresidents of the state of Alabama. Subsequent paragraphs of the bill aver further facts showing the incompetency and infidelity of the respondent officers.

The prayer is for injunction to prevent the issuance of any preferred stock or the increase of the bonded indebtedness of said corporation; for an accounting between the corporation, Greenleaf and Henry and the other stockholders of the corporation; for the removal of Greenleaf and Henry as officers of the corporation; and for the appointment of receiver.

J. F. Matthews and Knox, Acker, Sterne & Liles, all of Anniston, for appellants.

A bill is multifarious which seeks relief as to two distinct subjects having no dependence on each other. 155 Ala. 144, 46 South. 772; 9 Ala. 351; 23 Ala. 558; 10 Ala. 305; 80 Ala. 199; 93 Ala. 610, 7 South. 191; 61 South. 302; 147 Ala. 494, 42 South. 408; 72 Ala. 303; 107 Ala. 246, 18 South. 170; 176 Ala. 99, 57 South. 763. Where officers and directors are charged with gross fraud and mismanagement, yet, if they are solvent, this is no ground for appointment of a receiver. 147 Ala. 340, 41 South. 909; 137 Ala. 224, 34 South. 833, 97 Am. St. Rep. 23; 150 Ala. 268, 43 South. 817; 142 Ala. 570, 38 South. 841; 99 Ala. 68, 11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29. The bill was without equity. 98 Ala. 219, 13 South. 212; 165 Ala. 155, 51 South. 614.

Sydney J. Bowie and Borden Burr, both of Birmingham, for appellees.

A court of equity, having obtained jurisdiction will proceed to settle and adjudicate all matters in controversy, granting complete relief. 150 Ala. 608, 43 South. 805, 9 L. R. A. (N. S.) 1255; 173 Ala. 142, 55 South. 781; 200 Ala. 70, 75 South. 398; 157 Ala. 32, 47 South. 251; 147 Ala. 238, 40 South. 984. Where officers or directors of a corporation fraudulently use the corporate funds for their own benefit, equity may compel them to account at the instance of minority stockholders. 93 Ala. 364, 9 South. 217; 29 Ala. 508; 121 Ala. 131, 25 South. 1006; 140 Ala. 505, 37 South. 371; 137 Ala. 219, 33 South. 874; 96 Ala. 239, 11 South. 428, 17 L. R. A. 375; 170 Ala. 379, 54 South. 268; 113 Ala. 53, 21 South. 207; 198 Ala. 545, 73 South. 911. 6 Fletcher, Encyc. Priv. Corp. 6071; 14 C. J. 108. It is not necessary, to have a receiver appointed, that all respondents be shown to be insolvent. Thompson on Corp. (2d Ed.) § 422; 1 Foster, Fed. Prac. (4th Ed.) 768; (C. C.) 136 Fed. 710; 184 Pa. 9, 38 Atl. 1075; (C. C.) 189 Fed. 791; (C. C.) 72 Fed. 591; 104 U. S. 450, 26 L. Ed. 827. Dissolution will be granted wherever it appears that the inevitable result of continued corporate life will be the ultimate ruination of the corporate property. 173 Ala. 429, 55 South. 612; 184 Ala. 323, 63 South. 522; 133 Ala. 255, 31 South. 856, 91 Am. St. Rep. 27; 103 Miss. 876, 60 South. 1018, 43 L. R. A. (N. S.) 720, Ann. Cas. 1915B, 576; 10 Cyc. 787, 918; 67 Minn. 201, 69 N. W. 889, 64 Am. St. Rep. 410; 73 Minn. 203, 75 N. W. 1116, 72 Am. St. Rep. 616; 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 419.

GARDNER, J. Appellees, as minority stockholders of the Profile Cotton Mills, a corporation organized under the laws of this state, filed this bill against said corporation, Charles B. Henry and W. I. Greenleaf, as officers and directors thereof, and who own and control a majority of the stock. The remaining stockholders were also made parties respondent to the bill.

Respondents Henry and Greenleaf and the Profile Cotton Mills separately demurred to the bill, and from the decree overruling their demurrer have alone prosecuted this appeal. The other respondents taking no active part in the litigation.

Respondents Henry and Greenleaf are non-residents of Alabama, residing in Vermont; and it is averred that Greenleaf is insolvent. The salient features of the bill are set out in the report of the case, and reference will be made herein to its averments in a most general manner.

Respondent Henry was president and treasurer of the corporation, and Greenleaf its vice president and secretary; and these two officers, with one Weaver who, the bill alleges, is their subordinate and subservient tool, constituted the board of directors. These three men are alleged to have the entire management and control of the corporation, and to manage and control the same without regard to the rights of the minority stockholders, but in opposition thereto. The bill further charges that, in 1911, the respondent Henry having acquired a majority interest in the stock, sent respondent Greenleaf to Jacksonville, Ala., for the purpose of acquiring the complete ownership of its capital stock and its properties, and that these two men conspired together to secure the entire control of the corporation by having themselves elected as officers and directors, and, after the accomplishment of this purpose to operate and conduct the affairs of

the corporation for their own unlawful profit and gain and to the detriment of all other stockholders.

The bill further charges that these respondents plan "to withhold all information from the minority stockholders, to allow them no representation of any kind, to declare no dividends out of the profits of said corporation, to refrain from holding regular meetings of directors, to refrain from making regular reports of the affairs and business of said corporation"; and that, pursuant to such conspiracy, they refused to declare dividends, and, as an excuse therefor, made false representations to the stockholders as to the condition of the property, throwing out no hope of dividends in the future, and thus securing a large amount of the stock of said corporation at a nominal sum; that these respondents have refused to give information requested by complainants, and they (complainants) were refused the right to examine the books and accounts of the corporation, and had to resort to the courts for mandamus proceedings to that end; and when it was at last accomplished, the examination was in every manner impeded.

These respondents are further charged with an effort to have the corporation issue either bonds or preferred stock in the amount of $600,000 with which to pay in part simulated debts, and in part in retirement of bonds not yet due. The averments of fraudulent conduct of these respondents in regard to the stockholders with reference to the issuance of these bonds or preferred stock, are set forth in detail in paragraphs 19, 20, and 21 of the bill, which appear more fully in the report of the case; and an injunction was sought against the issuance of these bonds.

Respondents Henry and Greenleaf are charged with having fraudulently and illegally paid out or obtained for themselves secret profits in large sums of money at varying times, which are set forth in detail in the bill, approximating $2,500,000. Some of these sums of money are alleged to have been received by these respondents individually, and other amounts invested in farm property—where the title was taken in their names or for their benefit—and still another large sum used in another business, not within the charter powers of the corporation. The bill contains the further charge that, pursuant to this conspiracy, these officers held from the market large quantities of manufactured yarn at a loss amounting to $1,000,000; and made false statements to the federal government on income returns, resulting in the payment of large sums by way of penalty and interest.

The bill seeks to make permanent the temporary injunction restraining the issuance of the bonds or preferred stock; an accounting against these respondents of moneys which they have illegally and fraudulently received; a removal of these respondents from the further control of the corporation, and the appointment of a receiver to take possession of the property and assets of the corporation, to operate its business under the direction of the court for such time as the court might determine that it is to the interest of the corporation and its stockholders, that it be returned to the management of the stockholders, or, if not that, it be dissolved, and its assets properly distributed.

The assignments of demurrer which are discussed by counsel for appellant on this appeal are those which take the point that the bill is multifarious, as to so much of the bill as seeks the appointment of a receiver upon the ground that it does not appear that the corporation and respondent Henry are insolvent, and as to so much of the bill as seeks removal of the respondents Henry and Greenleaf as officers of the corporation, and the dissolution of said corporation; and, lastly, for a failure of the bill to show application by complainants to the board of directors of said corporation for redress of the alleged grievances, or sufficient excuse for failure to make such application. These constitute the only questions presented by counsel for appellant, and we will briefly treat them in the order stated.

[1] It is argued that there are many items in the bill, which complainants claim should be accounted for by respondent Henry individually, and others which should be accounted for by Greenleaf individually, while still others which should be accounted for by Henry and Greenleaf jointly, and that it also calls for an accounting between the corporation and these respondents separately as well as jointly.

It is also insisted that still another entirely distinct relief is sought in the injunction against the issuance of the preferred stock, and that the matters in which an accounting is sought are in part at least an action directly in behalf of the corporation, and can be maintained by complainants, if at all, merely because, as alleged in the bill, it is controlled by these respondents who are charged with wrongdoing. Counsel cite many authorities in this state upon the question of multifariousness, among them Singer v. Singer, 165 Ala. 144, 51 South. 755, 29 L. R. A. (N. S.) 819, 138 Am. St. Rep. 19, 21 Ann. Cas. 1102; Siglin v. Smith, 168 Ala. 398, 53 South. 260; Amer., etc., Co. v. Linn, 93 Ala. 610, 7 South. 191; Ford v. Borders, 200 Ala. 70, 75 South. 398.

We are persuaded, however, that the bill is not objectionable upon the ground of multifariousness. It has often been stated by this court that no universal rule is admitted to be established as to cover all possible cases. It is largely a matter of discretion to be determined by the court in each particular

case from the facts there presented, governed by what is convenient and equitable, subject of course to the recognized principles of equitable jurisprudence. In the case of O'Neal v. Cooper, 191 Ala. 182, 67 South. 689, is found the following pertinent quotation:

"Multifariousness, abstractly, has been properly said to be incapable of an accurate definition; but is generally understood to include those cases 'where a party is brought as a defendant on a record, with a large portion of which, and in the case made by which, he has no connection whatever.' Story's Eq. Pl. § 530; Kennedy v. Kennedy, 2 Ala. 573. The objection is greatly a matter of discretion, and so the circumstances under which it is allowed to prevail; so that every case must, in a measure, be governed by what is convenient and equitable under its own peculiar facts, subject to the recognized principles of equity jurisprudence. And it is always proper to exercise this discretion in such manner as to discourage future litigation about the same subject-matter, and prevent a multiplicity of suits, and never so as to do plain violence to the maxim that courts of equity 'delight to do justice, and not by halves.'"

It is well recognized that it is not necessary that all the parties to the bill should have an interest in all the matters in controversy, but it is sufficient if each defendant has an interest in some of the matters involved, and they are connected with the others. Truss v. Miller, 116 Ala. 494, 22 South. 863; Wilson v. Henderson, 200 Ala. 187, 75 South. 935; Treadaway v. Stansell, 203 Ala. 52, 82 South. 12.

The principal purpose of this bill is to rescue the corporation from impending ruin as the result of the wrongful and fraudulent conduct of the officers who have entire control of its affairs, and to save the corporation for the benefit of the complainants who are minority stockholders, as well as the remaining stockholders who are made parties respondent to the bill. The principal subject-matter therefore, of this litigation, is the corporation, and the primary controversy relates to the continuance in control and management of its affairs by these officers, and the accounting sought, together with other relief sought in the bill, incidental and intimately connected with this main purpose. The assignment of demurrer as to multifariousness was not well taken, and was therefore properly overruled.

[2] The second ground of demurrer argued, relating to that feature of the bill seeking the appointment of a receiver, seems to be based upon the theory that insolvency of these respondents and the corporation is necessary to be averred to justify the appointment of a receiver in any case, under any circumstances; and our attention is specifically directed to the following cases in support of this contention: Hayes v. Jasper Land Co., 147 Ala. 340, 41 South. 909; Ala. Coal & Coke Co. v. Shackelford, 137 Ala. 224, 34 South.

833, 97 Am. St. Rep. 23; Birmingham, etc., Co. v. Smith, 174 Ala. 374, 56 South. 721; Thompson v. Towel Mfg. Co., 87 Ala. 733, 6 South. 928; Wright v. Wright, 180 Ala. 343, 60 South. 931.

We have examined these authorities with care, and a discussion of each of them, noting the points of differentiation, would serve no useful purpose. The language in some of these authorities, quoted and relied upon by counsel for appellant, was used in support of the ruling of the court in those particular cases by way of reasoning and denial of the receivership under the facts there presented; but we are unable to find in the holding of these cases anything indicating that insolvency is necessary to be shown for the appointment of a receiver in every case and under all circumstances. Indeed, that such is not the rule as recognized in this state appears from a reading of the case of Jasper Land Co. v. Wallace, 123 Ala. 652, 26 South. 659, where it appears there were two factions, each claiming to constitute the board of directors of the corporation. In speaking to this question, the court said:

"It is plain to us that neither set is so in possession and control of the property and affairs of the company as to be able to take the necessary steps to the effectuation of the relief the stockholders are entitled to. In such case the appointment of a receiver, even though the corporation be solvent, to take charge and control of its effects and concerns, at least until there is a recognized board of directors competent to faithfully and efficiently conserve the interests of all the stockholders, is within the proper exercise of the jurisdiction of the chancery court."

And again, in Bridgeport v. Tritsch, 110 Ala. 274, 20 South. 16, is the following language here pertinent:

"Again, in Roman v. Woolfolk, 98 Ala. 219, we stated some principles which govern the appointment of receivers. We need not repeat what we there said, except to say that a minority of stockholders will not be permitted to displace corporate authority and control, by substituting therefor the policy, management and control of the courts, except in plain cases of such fraud or maladministration as works manifest oppression or wrong to them, and, we will add, when the displacement of corporate control plainly appears to be necessary to prevent further mischief; and, further, that before calling upon the court to take into 'its hands the administration of the corporate affairs, it must be made clearly to appear not only that such oppression or wrong to them depends, but that every reasonable effort has been made to secure redress and prevention of further mischief within the company itself. We say every reasonable effort. If it clearly appears that application to the governing body would be a futile and fruitless performance, and it is impracticable to obtain action by the stockholders, then effort, on that line, will not be required. Etowah Mining Co. v. Wills Valley, M. & M. Co., 106 Ala. 492."

Nor is this contention in keeping with the weight of authority, or supported by sound reasoning. The question of solvency, when discussed in this connection, relates, after all, only to the matter of the adequacy of the remedy at law. As to the respondent Greenleaf and Henry, however, Greenleaf is alleged to be insolvent, and he and Henry are nonresidents of the state. The nonresidence of Henry, though solvent, renders any remedy against him inadequate, and thus the contention resolves itself into the proposition that the corporation, being solvent, in no event should a receiver be appointed.

It is recognized by all the authorities that the appointment of a receiver upon application of the minority stockholders is a power exercised with the greatest caution. Several of the authorities illustrating that this power should be exercised only in the plainest cases are found cited in the recent case of Dixie Lumber Co. v. Hellams, 202 Ala. '488, 80 South. 872; but that such receiverships are necessary, although the corporation is solvent, under some circumstances, is shown by numerous authorities, as well as standard text-writers.

The case made by the bill here presented is not an ordinary one, and, as said in brief of counsel for appellees: "It would be difficult to imagine a case more thoroughly saturated with fraud than presented under the facts alleged." Counsel for appellees have summarized the salient features of the bill's averments, which we conclude is a fair presentation of what they complain, and which we here quote as giving in brief manner what is embraced within the charges made against these respondents:

"The respondent directors have acquired complete charge of the management of the property. They have conspired to enrich themselves and defraud the minority stockholders. They have, pursuant to their conspiracy, impaired the value of the stock by false representations until they have succeeded in compelling timid stockholders to sacrifice valuable stock for 10 cents on the dollar. Instead of paying dividends, as other corporations, honestly managed, under similar conditions have paid, they have announced a definite policy of not declaring dividends now or in the future. The dividends, instead of being paid, have been put in their own pockets. They have misappropriated moneys and assets of the corporation approximately $3,000,000. These sums they have converted to their own use. They have used their powers of trusteeship to make from the corporation secret profits in large sums. They have deliberately made false statements to the government in reference to the income taxes of the corporation, and thereby subjected the corporation to large penalties. They have used moneys of the corporation to buy, improve, and equip farms for their own personal use and carrying the title in their own name. They have gone beyond the charter powers of the corporation, engaged in the business of mining, and subjected the corporation to losses aggregating thousands of dollars. They have simulated debts to themselves as creditors of the corporation, and to secure the payment of these debts attempted improperly to issue preferred stock or bonds of the corporation, and, in order to accomplish their purpose in this regard, falsified the minutes of the corporation and then, when such acts were enjoined in contempt of court paid to themselves interest amounting to thousands of dollars on bonds or preferred stock which has never been issued. They have denied to the stockholders knowledge of its affairs, and have given to them false information. They have compelled the minority stockholders to resort to the strong arm of the court in order to have their right of examination of the books and papers of the corporation, and when the right was given to them by the court, delayed and impeded its execution, and stand convicted of contempt of the court's order."

As pertinent to a bill of this character, Mr. Thompson, in his work on Corporations (2d Ed.) vol. 4, § 4622, has the following:

"A stockholder has an unquestioned right to the appointment of a receiver where the facts disclose a scheme on the part of the directors or majority stockholders to wreck the corporation and dissipate its assets. Said one of the courts, after noting the hesitancy of courts to interfere in the management of corporations: 'It may further be said that this court has never denied power in a chancellor to prevent a scheme of irreparable injury and wrong, merely because the movers in that scheme speak and act in a corporate capacity rather than in an individual capacity. That solvent corporations are wrecked for purely selfish and illegal purposes, that minority interests are "frozen out," that business immorality has run amuck under the assumption that courts are powerless, is too true. But the assumption is wrong. Judicial hesitancy does not mean judicial atrophy or paralysis. The board of directors of a corporation are but trustees of an estate for all the stockholders, and may not only be amenable to the law, personally, for a breach of trust, but their corporate power under color of office to effectuate a contemplated wrong may be taken from them when, by fraud, conspiracy, or covinous conduct, or extreme mismanagement, the rights of minority stockholders are put in imminent peril and the underlying, original, corporate entente cordiale is unfairly destroyed. It would be a sad commentary on the law if, when the trustee of a corporate estate is making an improper disposition of it, or has shown improper partiality toward one of its conflicting parties or has put the estate in a fix it is liable and likely to be either wasted or destroyed, or mercilessly taken from all and given to a part, a court could not reach out its arm and preserve and administer the estate. We have never so declared the law.' "

And in Foster's Federal Practice (4th Ed.) vol. 1, pp. 468, 469, is found the following, with cases cited in the note in support thereof:

"Independently of statutory authority, a court of equity will ordinarily appoint a receiver of the property of a corporation only in eight classes of cases: Firstly. * * * Secondly. * * * Thirdly, at the suit of persons interested in the property, whether as stockholders

or creditors * * * where there is a breach of duty by the directors, actual or threatened damage of a serious nature, although there is no insolvency."

Many authorities are also cited in the case of Columbia, etc., Co. v. Washed Bar Sand Co. (C. C.) 136 Fed. 710, to the effect that while a receiver will not be appointed in such a case without a grave necessity therefor, yet where the facts recited charging mismanagement, show that the board of directors who were responsible were the majority stockholders, and were managing the corporation for their own benefit and diverting the funds and income to themselves, relief will be awarded the minority stockholders either by injunction, if that remedy could correct the evil, or, if necessary, by the appointment of a receiver. The rule is likewise recognized in Smith on Receivership, p. 359. An interesting discussion of the question is found in Green v. Nat. Advertising Co., 137 Minn. 65, 162 N. W. 1056, L. R. A. 1917E, 784, and Brent v. Brister Sawmill Co., 103 Miss. 876, 60 South. 1018, 43 L. R. A. (N. S.) 720, Ann. Cas. 1915B, 576.

Without further discussion of the question, we conclude that the averments of this bill present a case justifying, if true, the appointment of a receiver, though the corporation may be solvent. We are convinced from an investigation of the subject that this conclusion is supported by the decided weight of authority, as well as by sound reasoning, and a true sense of justice and fair play.

The question raised as to the dissolution of the corporation needs but brief consideration. It is to be noted that complainants first seek a return of the corporation to the management of the stockholders at such time as the court should determine that it is to the interest of the corporation, or, not so determining, then that dissolution be had, and distribution of its assets. In Decatur Land Co. v. Robinson, 184 Ala. 322, 63 South. 522, it was held that where a private corporation had failed of its objects and purposes of its creation, a single stockholder may maintain a bill for distribution of its assets and a dissolution of the corporation. A like question was considered in Noble v. Gadsden Land Co., 133 Ala. 250, 31 South. 856, 91. Am. St. Rep. 27, and in the note thereto Mr. Freeman made the following observation:

"When it has become impossible to accomplish the chartered purposes of the corporation, or when its affairs have been so managed that failure or ruin is inevitable, it would be a reproach on the administration of justice if a court of equity, on the application of a stockholder or a minority of the stockholders, could not extend relief, and this without any express statutory authority."

The Supreme Court of Michigan, in Miner v. Belle, etc., Ice Co., 93 Mich. 97, 53 N. W. 218, 17 L. R. A. 412, had a somewhat analogous situation, and the following language in that opinion is very apt in the instant case:

"This corporation has utterly failed of its purposes, not because of matters beyond its control, but because of fraudulent mismanagement and misappropriation of its funds. Complainant has a right to insist that it shall not continue as a cloak for a fraud upon him, and shall not longer retain his capital to be used for the sole advantage of the owner of the majority of the stock, and the court of equity will not so far tolerate such a manifest violation of the rules of natural justice as to deny him the relief to which his situation entitles him."

See, also, State ex rel. Independent Tel. Co. v. Second Judicial Circuit, 15 Mont. 324, 39 Pac. 316, 27 L. R. A. 392, 48 Am. St. Rep. 682.

We are therefore of the opinion the alternative prayer for relief by way of dissolution, if found necessary, is justified under the facts here presented, and this assignment of demurrer was also properly overruled.

[4] The remaining objection to the bill, argued by counsel for appellants, relates to its failure to aver that application was made to the board of directors for a redress of the alleged grievances, or a sufficient excuse for failing to make such application. The bill shows that the respondent officers, who are also directors of the corporation, owning and controlling the majority stock, and who have entire control of the corporation, are charged with gross mismanagement, fraudulent conduct pursuant to a conspiracy to conduct its affairs for their own profit, and to the detriment and injury of all other stockholders. Under the averments of the bill the following quotation from Ellis v. Vandergrift, 173 Ala. 142, 55 South. 781, is sufficient answer to this objection:

"No demand or request of the corporate authorities is required to be made, as a condition to suit by the stockholder, where it can be inferred with reasonable certainty that it would be refused, actually or virtually, or where, being the wrongdoers, a majority of the governing body would control the litigation so requested or demanded."

See, also, Ala. Fid. Mtg. & Bond. Co. v. Dubberly, 198 Ala. 545, 73 South. 911.

We have considered the assignments of demurrer argued in brief by counsel for appellant, and reach the conclusion that the court committed no error in overruling them, and the decree appealed from will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.