THE PHOENIX PORTLAND CEMENT CO. v.
SHADRACH ET AL.

*Corporations—Accounting between subsidiary and controlling companies—Preferred non-voting stockholders entitled to receiver, when—Right to sue on behalf of other stockholders —Right to accounting unaffected by seeking cancellation of stock.*

1. Preferred non-voting stockholders of a subsidiary corporation, in an action of accounting against the dominating and controlling corporation, are entitled to have a receiver of the former appointed, upon the ground of mismanagement and wasting of assets of the subsidiary corporation, when reasonably necessary to protect the interests of such stockholders, although such corporation is solvent as to creditors.

2. A preferred stockholder in such corporation, although seeking a decree of cancellation of his stock subscription and the return of stock payments, remains a stockholder until a decree is entered, and, in the meantime, may prosecute a suit for accounting on behalf of all the preferred stockholders.

(Decided January 5, 1924.)

ERROR: Court of Appeals for Franklin county.

*Mr. Edward C. Turner; Mr. B. W. Gearheart; Messrs. Williams, Sinks & Williams,* and *Mr. Geo. R. Hedges,* for the Portland Cement Company.
*Mr. Smith W. Bennett,* for Wm. G. Benham.
*Mr. Frank S. Monnett; Mr. Alfred N. Wilcox; Messrs. Crabbe & Johnson* and *Mr. James M. Butler,* for defendants in error.

ALLREAD, J. Lenna R. Shadrach, a preferred stockholder of the Phoenix Portland Cement Com-

pany, an Ohio corporation, brought suit against that company, the R. L. Dollings Company, an Ohio corporation, William G. Benham, and Dwight Harrison, for an accounting and for a receiver. She also asked for a cancellation of her stock subscription, for fraud.

The petition states in detail the control over the Ohio Phoenix Company exercised by the R. L. Dollings Company and Benham and Harrison through ownership of the common stock; that the preferred stockholders, who contributed the capital stock of the company, have no voice in the management of the company; and that the R. L. Dollings Company and Benham and Harrison wholly dominate the Ohio Phoenix Company and have grossly mismanaged said company and wasted and depleted its assets and greatly impaired the security of its preferred stockholders. The action is mainly against the R. L. Dollings Company and Benham and Harrison for mismanagement and wasting of the assets of the Phoenix Company, and the plaintiff brings the action on behalf of all the preferred stockholders of the Phoenix Company.

Shortly after the commencement of the action an application was made for the appointment of a receiver, and the application came on for hearing. The hearing lasted several days and a mass of evidence was taken. During the progress of the case an amendment and supplement to the petition were authorized. The receivers of the R. L. Dollings Company upon their own application were made parties.

Upon the application of the defendants the Shadrach case was consolidated with the case of

*Mary E. Miller* v. *The R. L. Dollings Company et al.,* in the Court of Common Pleas. That court, after hearing the consolidated case, sustained the application, and appointed Freeman T. Eagleson receiver. The Phoenix Portland Cement Company prosecutes error.

Counsel for plaintiff in error contend that the appointment of a receiver was (1) contrary to law; (2) contrary to the evidence; and (3) an abuse of discretion. It is contended that the Ohio Phoenix Company is not insolvent, that it has property in the neighborhood of two million dollars, that it owes only the sum of about one hundred and eight thousand dollars; that the only creditor opposes the receivership; and that, therefore, the appointment of a receiver is unauthorized.

While insolvency or probable insolvency is the usual ground for the appointment of a receiver for a corporation, it is not the only ground. Section 11894, General Code, authorizes the appointment of a receiver (6) "In all other cases in which receivers heretofore have been appointed by the usages of equity."

Counsel for plaintiff in error cite and rely upon the case of *Cincinnati, Hamilton & Dayton Rd. Co.* v. *Duckworth,* 2 C. C., 518, which was affirmed by the Supreme Court without report. There, an application was made for the appointment of a receiver because of mismanagement and wasting of assets by a former management of the Railroad Company. Before the action was brought, however, a responsible and representative board of directors had been elected superseding those who were responsible for the mismanagement. The

company was entirely solvent. It was held that a receiver should not be appointed. That case, while it expresses the reluctance of courts to appoint receivers for solvent corporations, does not control a case where a receivership is reasonably necessary to protect the rights of minority or nonvoting stockholders.

The usages of courts of equity may be defined and understood by a reference to the authorities.

In 23 Ruling Case Law, page 17, it is said: "The right to call into action the power of a court of equity to appoint a receiver in a proper case exists as well in a stockholder in a corporation as in a creditor."

Again, on page 22 of the same authority, it is said: "Misconduct on the part of the officers or directors of a corporation in the management of the corporate business is not ordinarily a sufficient ground for the appointment of a receiver. But where the acts of directors or officers are of such a character as to amount to a gross mismanagement of the business of the corporation or to a misapplication of its assets to the injury of its stockholders or creditors a receiver will be appointed."

*State, ex rel. Telegraph Co.,* v. *Second Judicial District,* 15 Mont., 324; *Supreme Sitting of the Order of the Iron Hall* v. *Baker,* 134 Ind., 293; *Brent* v. *Brister Saw Mill Co.,* 103 Miss., 876.

We quote from *Cantwell* v. *Columbia Lead Co.,* 199 Mo., 1, at page 42, reproduced in 4 Thompson on Corporations (2 ed.), Section 4622:

"It may further be said that this court has never denied power in a chancellor to prevent a scheme of irreparable injury and wrong, merely

because the movers in that scheme speak and act in a corporate capacity rather than in an individual capacity. That solvent corporations are wrecked for purely selfish and illegal purposes, that minority interests are 'frozen out,' that business immorality has run amuck under the assumption that courts are powerless, is too true. But the assumption is wrong. Judicial hesitancy does not mean judicial atrophy or paralysis. The board of directors of a corporation are but trustees of an estate for all the stockholders and may not only be amenable to the law, personally, for a breach of trust, but their corporate power under color of office to effectuate a contemplated wrong may be taken from them, when, by fraud, conspiracy, or covinous conduct, or extreme mismanagement, the rights of minority stockholders are put in imminent peril and the underlying, original, corporate *entente cordiale* is unfairly destroyed. It would be a sad commentary on the law if, when the trustee of a corporate estate is making an improper disposition of it, or has shown improper partiality towards one of its conflicting parties, or has put the estate in a fix it is liable and likely to be either wasted or destroyed, or mercilessly taken from all and given to a part, a court could not reach out its arm and preserve and administer the estate. We have never so declared the law.''

We have quoted from this opinion at length because it strikes the vitals of the case under consideration. The preferred stockholders contributed the entire assets of the Ohio Phoenix Company. The preferred stock had no voting power except in the event of a default in four semiannual

payments of dividends. For all practical purposes the preferred stockholders were disfranchised. The common no-par stock of the corporation, which had the voting power, came into the hands of the R. L. Dollings Company, and it does not appear in the record that the Dollings Company paid any consideration for said common stock, or that the Dollings Company had any investment in the Ohio Phoenix Company except its commission for the sale of preferred stock. The Phoenix Portland Cement Company of Ohio was incorporated in August, 1922, for the purpose of engaging in the business of manufacturing cement. Its original authorized capital stock was five thousand dollars. This was increased in September to ten millions of preferred and one hundred thousand shares of no-par common stock. About two and one-half millions of preferred stock were sold by the Dollings Company agency, and over two million dollars from the sale of such preferred stock was paid in. The Dollings Company, under the fiscal-agency contract of September 21, 1922, received the amount of all of the subscriptions to the capital stock of the Ohio Phoenix Company, and has managed and disbursed the same under the so-called agency contract. The fiscal agency contract confirmed and made more sweeping and secure the power of the Dollings Company over the Ohio Phoenix Company, and it appears that substantially all the business of the Ohio Phoenix Company was transacted by the Dollings Company. The fiscal agency contract was supplemented by the contract of February 8, 1923. This, in substance, was a three-party contract and was made between Lindley C. Morton, as an individual, the

Phoenix Portland Cement Company of Pennsylvania, and the Phoenix Portland Cement Company of Ohio.

The Fidelity Trust Company, as a fourth party, signed as depository of the stock of the Pennsylvania Phoenix Company under the contract. This contract adopted in full the fiscal agency contract of September 21, so that, although the R. L. Dollings Company was not formally a party to the contract, the controlling agency of the Dollings Company was recognized and confirmed. The contract therefore left the affairs of the Ohio Phoenix Company exclusively with the Dollings Company. Under the latter contract the Ohio Phoenix Company, through the agency of the Dollings Company, made a cash payment of over two hundred thousand dollars to Lindley C. Morton as the owner of ninety-nine per cent. of the stock of the Pennsylvania Phoenix Company (which owned the cement plant at Nazareth, Pennsylvania, and had a plant under construction at Birmingham, Alabama), and agreed to pay a certain stipulated amount per month on the purchase price until the full amount was paid. The Ohio Phoenix Company also agreed to contribute funds for the completion of the Birmingham plant.

The purchase of these plants was provided for by this contract under the terms therein stipulated, and the contract continued in force until June 28, 1923, at which time a new contract was made between the Phoenix Portland Cement Company of Pennsylvania, the Phoenix Portland Cement Company of Ohio, Lindley C. Morton, the R. L. Dollings Company of Ohio, and the R. L. Dollings Company of Pennsyl-

vania. This latter contract recites that the sum of four hundred and two thousand ($402,000) dollars had been contributed by the Ohio Phoenix Company to Lindley C. Morton on account of the purchase of his stock in the Pennsylvania Phoenix Company, that the further sum of $1,643,949.39 had been contributed by the Ohio Phoenix Company for the construction of the Alabama plant, and that the Ohio Phoenix Company was unable to proceed with the contract of February 8, 1923. By the contract of June 28, the Ohio Phoenix Company received from Lindley C. Morton the sum of $245,949.39, in release of said contract of February 8, so far as the same related to the stock of the Pennsylvania Phoenix Company, and received a deed for the Alabama plant subject to a reservation of the exclusive use of the plant by the Pennsylvania Phoenix Company for a period of fifty years upon a payment to the Ohio Phoenix Company of a royalty of eleven cents per 380-pound barrel of Portland Cement manufactured at the said plant. There are also other conditions in the reservation. W. G. Benham testified that the $245,000 returned from Lindley C. Morton was placed by him to the credit of the treasurer of the R. L. Dollings Company, and has been paid out from time to time. No definite or reliable account of the expenditure of said money is found in the testimony of Mr. Benham. Mr. Benham also states (pages 883 and 913 of the record) that the net profit of the manufacture of cement at the Alabama plant was estimated by him at a minimum of twenty-five and a maximum of forty cents per barrel.

We recite these facts to show the importance

of the action of accounting against the R. L. Dollings Company and Benham and Harrison, and to show how vital it is to the preferred stockholders of the Ohio Phoenix Company to have this accounting made and a full investigation of the regularity and validity of the contract and deed of June 28, 1923, entered into.

The preferred stockholders of the Ohio Phoenix Company are vitally interested. In view of their disfranchisement they have no other remedy to protect their interests than to appeal to a court of equity. The accounting is in reality an adversary proceeding against the R. L. Dollings Company and Benham and Harrison. The rights of the preferred stockholders, in view of the interwoven affairs of the R. L. Dollings Company and the Ohio Phoenix Company, can best be worked out by an independent representative of the preferred stockholders. It is reasonable that the controversy should involve proceedings against the Dollings Company and perhaps other related corporations and parties in many of the complicated transactions under the contracts above referred to.

During the proceedings the directors of the Ohio Phoenix Company, under the R. L. Dollings regime, resigned, and the three receivers of the R. L. Dollings Company, in connection with Mr. George R. Hedges, were placed upon the Board of Directors, and it is urged that this reorganization and the placing of the directory in the hands of responsible and high-class men should be a valid reason to require a denial of the appointment of a receiver.

We agree that the men now on the board of directors are high-grade and conscientious business

men and would endeavor to treat all interests fairly. They would, however, stand between two contending parties, and it would be inconsistent in our judgment to require them to represent the Ohio Phoenix Company in these various important transactions in which the R. L. Dollings Company would necessarily be adversary. The affairs are too complicated, too intricate, to be decided and determined in an *ex parte* way or by the individuals who are also receivers of the R. L. Dollings Company. They would be called upon to compromise with themselves, or decide impartially between themselves, as directors of the Ohio Phoenix Company and as receivers of the Dollings Company. We think the reasonable and practical way of unscrambling the interwoven affairs of these companies would be the course adopted by the judge of the Court of Common Pleas in appointing an independent receiver for the Ohio Phoenix Company.

Again, it is urged by counsel for plaintiff in error that the plaintiff below, Lenna R. Shadrach, does not appear in the role of a preferred stockholder, but asks for a rescission of her contract of subscription and that she be declared a creditor. This is the most difficult feature of the case from a legal standpoint. In the discussion of the case in this opinion we have regarded her as a preferred stockholder, suing in behalf of other preferred stockholders.

Counsel for plaintiff in error contend that by seeking a rescission of her stock-subscription contract she voluntarily placed herself in the position of a general creditor, and is not entitled to sue

for any other creditor or for the preferred stockholders.

We have given this matter considerable investigation and have reached the conclusion that this is an action in chancery and that until the plaintiff secures a decree cancelling her stock subscription she is a stockholder and entitled to all the rights and privileges of a stockholder. This proposition finds support in the opinion of Judge Shauck in *National Bank* v. *Wheelock*, 52 Ohio St., 534, 549. The rules of rescission of contracts are not as rigid in equitable cases as at law. Shadrach does not know that the decree of rescission sought by her will be granted. To strip her of the rights of a stockholder and at the same time withhold from her the rights of a creditor would be anomalous, and inconsistent with the rules of equity. She comes into court as a defrauded party and therefore invokes the favorable consideration of a court of equity.

The decree of rescission might not be granted, on account of complications with creditors or other stockholders, and, until such relief is afforded, the plaintiff in our judgment is entitled to maintain her action as a stockholder, and on behalf of other preferred stockholders.

We have examined the evidence in the case and are of opinion that the order of the Court of Common Pleas appointing an independent receiver is not contrary to the weight of the evidence, nor an abuse of discretion.

*Judgment affirmed.*

KUNKLE and FERNEDING, JJ., concur.